tion is insufficient to raise any legal presumption against the validity of this tax to justify the granting of an injunction in this case when the work has been done and accepted without objection on the part of the petitioners, especially when all of the material facts are put in issue by the answering affidavits on the part of the defendant.

We are also of the opinion that the contractor whose interests were to be affected by these proceedings was a necessary and proper party to the record. He could look only to this assessment and the collection of this tax for his compensation, and when it was proposed to cut off his source of supply, he had a right to be in court to defend his interest.

The order should be reversed and the temporary injunction vacated, with costs.

PUTNAM, J., concurred; HERRICK, J., not acting.

Order reversed and temporary injunction vacated, with costs and printing disbursements.

---

THE PEOPLE ex rel. GEORGE C. CARTER, PLAINTIFF,
v. FRANK RICE, SECRETARY OF STATE OF THE STATE OF
NEW YORK, DEFENDANT.

*Apportionment act, chapter 397, Laws of 1892 — validity thereof — difference in the creation of senate and assembly districts — an extraordinary session of the legislature — an " extraordinary occasion" — contents of the governor's proclamation — discretion of the legislature — injunction to restrain a State officer from the performance of a statutory duty.*

It is provided by section 4, article 3 of the New York State Constitution, that " an enumeration of the inhabitants of the State shall be taken, under the direction of the legislature, in the year 1855 and at the end of every ten years thereafter," and that upon the enumeration so taken an apportionment of the senate and assembly districts shall be had. Such an enumeration was taken in each tenth year, to and including 1875, after which date no reapportionment was made until 1879, when a reapportionment was made by chapter 208 of that year, based on the enumeration of 1875, and no further enumeration was taken until 1892, when by chapter 5 of the laws of that year an enumeration was ordered to be taken.

Upon the day when the legislature adjourned *sine die*, April 21, 1892, and immediately prior to its final adjournment, the governor, pursuant to section 4 of article 4 of the State Constitution, which declares that the governor shall have power to convene the legislature on extraordinary occasions, when no subject

shall be acted upon, except such as the governor may recommend for considera-
tion, reconvened the legislature for a session to commence on April 25, 1892.

The governor, in his proclamation, assigned no reason for convening the legisla-
ture, but subsequently sent it a message recommending for its consideration
an apportionment, which the legislature proceeded to make. Article 3, sec-
tions 4 and 5 of the Constitution, provide that an apportionment shall be made
by the legislature "at the first session after the return of every enumeration,"
and that each senate and assembly district shall contain, "as nearly as may be,"
an equal number of inhabitants.

At this extraordinary session the legislature passed a new apportionment act, being
chapter 397 of the laws of that year.

In a proceeding taken to test the validity of such apportionment:

*Held,* that the act (chap. 397 of the Laws of 1892), and the apportionment made
under it, were constitutional.

That the fact that the legislature of 1885 failed to perform its constitutional duty of
ordering an enumeration, did not prevent a subsequent legislature from acting
in that regard.

It appeared that the provisions of the Constitution (art. 3, §§ 4, 5) as to the com-
position of senate and assembly districts differed, it being directed that a senate
district must contain, as nearly as may be, an equal number of inhabitants,
"excluding aliens and persons of color not taxed," while in the case of an
assembly district only aliens were to be excluded.

*Held,* that as the present proceeding was taken only to test the constitutionality of
the act as to an assembly district, the court would not consider the fact that the
enumeration of 1892, as alleged, failed to enumerate and tabulate persons of
color not taxed.

That where a part of an act is constitutional and another part is not, and these
parts are separable, that which is constitutional must be upheld.

That at a session of the legislature convened by the governor, provided it was the
first session after the return of the enumeration, it would, within the meaning of
the Constitution, have power to make an apportionment, and that the apportion-
ment made was valid.

That the failure of the previous legislature to make an enumeration and gross
inequalities in the apportionment act of 1879, constituted an "extraordinary
occasion," and justified the governor in convening the legislature.

That it was not material that his proclamation did not state the object for which
the legislature was convened.

That section 5 of article 3 of the Constitution, directing that the apportionment of
members of assembly be made, "as nearly as may be," according to the number
of inhabitants of the several counties, gave to the legislature a discretion in the
matter which had not been abused.

That the inequalities of the apportionment of 1879 seemed as great as those of the
act of 1892; and that, as the effect of granting the application for a *mandamus*
in this case would be to make the representation revert to the basis of 1879, the
application must be denied.

That there must be a very clear case made to justify the court in interfering by
injunction to prevent a State officer from performing a statutory duty.

MOTION made at General Term, by the People of the State of New York on the relation of George C. Carter, for an order directing that a peremptory *mandamus* issue, directed to the defendant Frank Rice, Secretary of State of the State of New York, which, as stated in the notice of motion, would command him " to forthwith proceed to issue and deliver to the clerks of the respective counties of the State of New York, election notices, as provided by section 5 of chapter 680 of the Laws of 1892 ; and that he embrace in said election notices, the number of members of assembly to be voted for at the election to be held on the 8th day of November, 1892, required and allowed to be voted for under the provisions of the apportionment act of the legislature, known as chapter 208 of the Laws of 1879, entitled 'An Act to organize the Senate Districts and for the apportionment of the Members of Assembly of this State ; ' and that he be commanded to give election notices in pursuance of the apportionment contained in said act and in conformity with the certificates filed with him by the board of supervisors of the respective counties of this State ; and of the board of aldermen of the city and county of New York, filed, in pursuance, with the provisions of said chapter 208 of the Laws of 1879, with the Secretary of State of the State of New York ; and that said writ of *mandamus* contain a restraining order, and that the defendant Frank Rice, Secretary of State of the State of New York, be restrained from accepting and filing certificates of the division of counties into assembly districts, as provided by chapter 397 of the Laws of 1892 ; and from accepting, filing or canvassing returns from election districts, other than those created by said chapter 208 of the Laws of 1879 ; and from doing or suffering to be done, or aiding or procuring to be done, or done by virtue of the provisions of chapter 397 of the Laws of 1892, entitled 'An Act to organize the Senate Districts and for the Apportionment of Members of Assembly of this State,' upon the ground that the said act of the legislature is unconstitutional and void; and also that chapter 5 of the Laws of 1892, entitled ' An Act to provide for the enumeration of the inhabitants of this State,' in pursuance of which the enumeration upon which said act, chapter 397 of the Laws of 1892, was based; and that the act of the defendant Frank Rice, Secretary of State of the State of New York, recognizing as valid the said last-mentioned acts of the legislature, are calculated to work

irreparable injury to the People of the State ·of New York, and especially to the rights and privileges of the relator in these proceedings; and that said application for said *mandamus* will be made upon all the grounds set forth in the moving papers, and for such other and further relief in the premises as to the court may seem meet and proper to grant."

The ground of the application was the unconstitutionality of chapter 397 of the Laws of 1892.

Enumerations were taken in the State of New York in 1855, 1865 and 1875, and none thereafter until 1892. The apportionment act of 1879, chapter 208, was based on the census of 1875. The enumeration for 1892 was directed by chapter 5 of the laws of that year. The legislature of that year adjourned *sine die* on April 21, 1892. Just before its adjournment the governor reconvened it by the following proclamation:

### PROCLAMATION BY THE GOVERNOR.

STATE OF NEW YORK,            }
EXECUTIVE CHAMBER. }

Pursuant to the power vested in me by Section 4 of Article IV of the Constitution, I hereby convene the Legislature in Extraordinary Session, at the Capitol, in the city of Albany, on the twenty-fifth day of April, 1892, at 8.30 o'clock in the evening.

Done at the Capitol, in the city of Albany, this twenty-first [L. S.] day of April, in the year of our Lord, one thousand eight hundred and ninety-two.

By the Governor:            ROSWELL P. FLOWER.
T. S. WILLIAMS,
*Private Secretary.*

*Edwin H. Risley*, for the appellant.

*Simon W. Rosendale*, Attorney-General, for the respondent.

MAYHAM, P. J.:

This was a motion for a peremptory *mandamus* requiring the Secretary of State to immediately issue notices to the several county clerks of the State stating the facts required by section 5 of chapter 680 of the Laws of 1892, and directing them to include in such

notices the number of members of assembly from each county directed, required and allowed by the apportionment law as contained in chapter 208 of the Laws of 1879.

The motion further asks to restrain the Secretary of State from receiving, filing or recognizing certificates of the division of the counties into assembly districts, as prescribed by chapter 397 of the Laws of 1892, and also restraining him from canvassing election returns from assembly districts other than those created in pursuance to the apportionment made by chapter 208 of the Laws of 1879.

This application is based chiefly upon the affidavits of the relator, wherein it is alleged that the Secretary of State is about to and has issued notices of election to the county clerks of the several counties of the State for the election of members of assembly at the general election to be held in November, 1892, in pursuance of the provisions of chapter 397 of the Laws of 1892, by which the number of members of assembly to be chosen in some of the counties in the State was changed from that provided for by chapter 208 of the Laws of 1879.

The alleged ground upon which the application is made is, that the enumeration of inhabitants upon which the apportionment of 1892 was made was unconstitutional, and that the apportionment, based upon such enumeration, was, therefore, unconstitutional and void, and that the apportionment was unequal and, therefore, not in conformity with the requirements of that instrument, and is for that reason unconstitutional and void.

The main points urged against the unconstitutionality of this enumeration and apportionment are:

*First.* That the time of making the enumeration was unauthorized by the Constitution.

*Second.* That the enumeration itself was unconstitutional in that it did not contain a statement of the number of persons of color not taxed.

*Third.* That the time of making the re-districting or apportioning of the assembly districts was not that prescribed by the State Constitution.

*Fourth.* That the assembly apportionment designated by the act of 1892 was not so arranged as to contain, as nearly as may be, an equal number of inhabitants.

The first ground of objection above specified, viz., that the enumeration was not taken at the termination of the first decade period after the enumeration of 1875, does not seem to be strenuously urged by the learned counsel for the relator, and it seems to be conceded that as the legislature of 1885 failed to perform the duty imposed upon them by section 4 of article 3 of the Constitution, in neglecting to provide for the enumeration of the inhabitants in that year, that that duty might be performed by a subsequent legislature at any time before the expiration of the decade for which it was to be taken.

The manifest object of the constitutional provisions in providing for frequent enumeration of the people, being for the purpose of equalizing representation between different localities and political divisions of the State, presents a strong argument in favor of the performance of that duty by a subsequent legislature, when the body upon which the duty was directly charged failed in its performance.

This principle has been established and sustained by a uniform current of judicial decisions. (*People* v. *Supervisors of Ulster County*, 34 N. Y., 271; *Rumsey* v. *The People*, 19 id., 50; *Smith* v. *Jones*, 1 Barn. & Adol., 328–334; *Ex parte Heath et al.*, 3 Hill, 42.)

In the case last cited, COWEN, J., at page 47, says: "Nothing is better settled, as a general rule, than that when a statute requires an act to be done by an officer, within a certain time, for a public purpose, the statute shall be taken to be merely directory, and though he neglect his duty by allowing the precise time to go by, if he afterwards perform, the public shall not suffer by the delay."

In *People* v. *Supervisors of Chenango County* (8 N. Y., 330), the question was whether a board of supervisors, which had neglected to perform a duty which they were required to perform at the annual meeting, could be compelled to perform it at a later period, and in the discussion of that question Judge WILLARD says: "Their neglect to perform their duty at the time required cannot nullify the statute. They, or their successors, are bound to do what was required, and on failure to perform it may be compelled by *mandamus.*"

It the *People ex rel. McMackin* v. *The Board of Police* (46 Hun,

296), it was held that when the statute directed that the board of police should make appointments of inspectors of election in the months of August and September in each year, their failure to do so did not invalidate an appointment made after that time. The principle above enunciated seems so well settled that further citation of authorities is unnecessary. The same rule of construction which applies to statutes is equally applicable to constitutional provisions of similar character. In the *People* v. *Enoch L. Fancher* (50 N. Y., 288), ALLEN, J., says: "The same general rules which govern the construction and interpretation of statutes and written instruments generally, apply to and control in the interpretation of written constitutions." Within the above principles and authorities, it would seem that the legislature of 1892 might lawfully perform the constitutional duty of providing for an enumeration of the inhabitants of the State, which the legislature of 1885 neglected and refused to do, and that the law authorizing the enumeration in 1892 was constitutional.

The second objection taken to the unconstitutionality of the enumeration is that it failed to enumerate and tabulate persons of color not taxed. The Constitution of the State, relating to senate districts provides that "Each senate district shall contain, as nearly as may be, an equal number of inhabitants, excluding aliens and persons of color not taxed." (Article 3, section 4 of the Constitution.) Section 5 of the same article provides that "The members of assembly shall be apportioned among the several counties of the State by the legislature, as nearly as may be, according to the number of their respective inhabitants, excluding aliens, and shall be chosen by single districts."

It will be seen by this provision that persons of color not taxed are not to be excluded from the enumeration in the designation of assembly districts; but the enumeration for the apportionment is to embrace all except aliens, and it is difficult to see how an apportionment of members of assembly can be made to conform to that provision of the Constitution without embracing all the inhabitants except aliens. This the petition expressly alleges was done by the legislature in making the apportionment by chapter 680 of the Laws of 1892.

No question is raised in the notice of motion in this case as to the formation of senate districts, and we are only called upon in this

proceeding to examine the constitutionality of the law as applied to assembly districts. By the theory of the Constitution the formation of senate and assembly districts are entirely distinct. Senate districts are formed by the legislature, while only the legislature apportions the number of assemblymen to which counties are entitled; where entitled to more than one, between the different counties, leaving the districts to be formed by the board of supervisors.

The formation of the assembly districts is in no way dependent upon the population or boundaries of the senate district; and it would seem, from the different constitutional provisions as to the persons to be excluded from the enumeration, if the color line is still in force, that they are composed of different classes of persons, to wit, persons of color not taxed, to be included in assembly enumerations and excluded in senatorial enumerations.

As the senate and assembly districts are in no way identical, and the formation and erection of one in no way depends upon the other, it would follow that if the apportionment as to senate districts was unconstitutional by reason of the failure to exclude from the apportionment persons of color not taxed, because that class of persons are excluded in senatorial apportionment by the Constitution, that fact could not render the formation of assembly districts unconstitutional, when the Constitution in express terms requires that class of persons to be included in the enumeration. If the enumeration is constitutional as to the assembly districts, and unconstitutional as to the senate, the former will be upheld, while on a proper application the other might be set aside. Where parts of an act of the legislature, not dependent upon each other, are held one to be constitutional and another unconstitutional, the part held to be constitutional will be upheld while the part unconstitutional will be overthrown.

In *Wynehamer* v. *People* (13 N. Y., 442), SELDEN, J., says: " Where part of a law is in conflict with the Constitution, and that part is entirely separable from the residue, so that other portions of the law can be enforced without reference to it, there the unconstitutional part only will be condemned."

In *Presser* v. *Illinois* (116 U. S., 252), the court say: " That statutes that are constitutional in part only will be upheld, so far as they are not in conflict with the Constitution, provided the allowed

and prohibited parts are separable," and similar doctrine is laid down in *Packet Company* v. *Keokuk* (95 U. S., 80); *Penniman's Case* (103 id., 714); *Unity* v. *Burrage* (Id., 459); *Baldwin* v. *Franks* (120 id., 679).

It is urged with great force, by the learned attorney-general, that by the effect of the thirteenth and fourteenth amendment of the Federal Constitution and the legislation in this State, arising out of the provisions of those amendments, there no longer exists in this State a class of persons known as " persons of color not taxed." That by the enfranchisement of persons of color, without regard to property qualifications, all that class became citizens and taxable, at least subject to poll tax, and the color line was expunged from our Constitution by force of the provisions of the Federal Constitution. But the views we have taken of this question would seem to uphold the constitutionality of the assembly district apportionment, and that, as we read the notice of motion, is the only question now before us, and we are not called upon to consider that question on this motion.

The next question for consideration is whether the apportionment can constitutionally be made at an extraordinary session of the legislature, during the same year that the enumeration is taken, and by the same legislative body.

The only constitutional restriction or limitation on the time for making the apportionment is that it is required to be made at " the first session after the return of every enumeration." There is no direct requirement in the Constitution that it shall be at a regular session of the legislature, nor is there any constitutional prohibition against its occurrence at an extraordinary session of the legislature, provided such session is the first one occurring after the enumeration.

It is true that it has been held that the provisions of the Constitution, as to the time of making the apportionment, is not mandatory, and the failure of the legislature to make the same at the first succeeding session would not render an apportionment at a later period void.

In *Rumsey* v. *People* (19 N. Y., 41, 54), STRONG, J., in delivering the opinion of the court, uses this language : " It has been objected to the acts constituting the Assembly apportionment and the Senate districts, that they were not passed at the first session after the

return of the enumeration made in 1855, according to the direction in the Constitution (article 3, § 4). That direction has not generally been considered so peremptory as to prohibit the performance of those acts at another time. It is apparent that no such restriction was designed as to the time when such apportionment of Assembly districts and formation of Senate districts should be established."

In the case JOHNSON, Ch. J., uses this language: "Now, as to Senate districts and Assembly apportionment, they had power to act in 1857, as the neglect of their imperative duty in 1856 would not make void the apportionment of 1857."

From this case it appears that the constitutional provision is not mandatory that the apportionment shall be made at the next regular session of the legislature chosen at the succeeding election as is strenuously contended by the counsel for the relator. That being so, if the extraordinary session at which this apportionment was made was a legal and constitutional session of the legislature, then it could properly make this apportionment. The governor, by his proclamation, assumed to convene the legislature in extra session under the provisions of section 4 of article 4 of the Constitution. This article gave the governor power to convene the legislature in extraordinary session, and from the very nature of this provision he must be the judge as to what constitutes the extraordinary occasion. But if we are to look for facts constituting an extraordinary occasion, it can be found in the neglect of previous legislatures to provide for an enumeration upon which an apportionment could be made, and the gross inequality of representation of the different portions of the State in the legislature, which was not only a matter of public notoriety, but abundantly appears in the papers on this motion, furnish such extraordinary occasion. But it is urged that the proclamation did not set forth the object for which the legislature was convened, and that for that reason it was irregular and did not authorize the legislature to make an apportionment.

The Constitution provides that "at extraordinary sessions no subject shall be acted upon, except such as the governor may recommend for consideration." (Art. 4, § 4.) There is nothing in this constitutional provision that requires the governor to recommend any subject to the legislature in the proclamation convening the legislature in extraordinary session.

But under this provision, the legislature after convened would be powerless to act if the governor failed to recommend a subject for their action. This, however, the governor did on the convening of the legislature, by a message addressed to them, in which they were specifically limited to the making of an apportionment. It cannot, therefore, be said that the legislature acted without the authority, upon which alone the Constitution empowers them to act. They, therefore, in fact, legislated upon the subject recommended by the governor, and the objection to their acts upon that ground necessarily falls.

The only remaining question upon this point is, was the extraordinary session a session of the legislature? If it was, then it was clearly the first session after the enumeration, and one at which the apportionment could constitutionally be made. Most undoubtedly it was a session of the legislature, and came within the language of the Constitution. This was clearly shown by Justice MACOMBER, in his opinion lately handed down in the *People ex rel. Pond* v. *The Monroe Supervisors* (not reported),* he says : " There may be more than one session of the legislature during the legislative year, and that an Extraordinary Session may be the next session after the return of the enumeration to the Legislature if the governor interpose his discretionary power so to reconvene that body, though in the same year, is, I venture to think, well shown by the Constitution itself, taken as a whole."

This view is strengthened when we find that where the Constitution requires that any act shall be submitted to a legislature subsequently chosen, as in proposing amendments to the Constitution, it is expressly provided that the proposed amendment must be submitted to a legislature subsequently to be chosen by the people. It is fair to argue and infer, therefore, that if the apportionment was required to be passed by a legislature subsequently chosen, the Constitution would have so expressly provided.

I am, therefore, clearly of the opinion that it was competent within the Constitution for the legislature to make this apportionment at the session at which it was made. It remains to consider whether the assembly apportionment in the act under consideration

---

Reported, *post*, page   .

is such as to authorize the court to set the act aside as unconstitutional and void.

Section 5 of article 3 of the Constitution provides that "the members of assembly shall be apportioned among the several counties of the State by the legislature as nearly as may be, according to the number of the respective inhabitants." It is clear that the words "as nearly as may be" are words conferring a discretion upon the legislature; they were not in the original Constitution, and first became a part of the fundamental law by the amendment of 1891. That amendment could have had no other purpose than that of conferring a discretion on the legislature in making the apportionment. But we are not without judicial guide in determining what this phrase "as nearly as may be" signifies. In *Indianapolis and St. Louis Railroad Company* v. *Horst* (3 Otto [U. S.], 300, 301), Judge SWAYNE, in speaking as to the conformity of the pleadings and practice of that court to the practice of the State court, when the action is prosecuted in the United States Courts in a State, in construing the statute of the United States containing these words, says: "The conformity is required to be 'as near as may be;' not as near as may be *possible*, or as near as may be *practicable*."

This indefiniteness may have been suggested by a purpose; it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such State statutes, which in their judgment would unwisely encumber the administration of the law or tend to defeat the ends of justice in their tribunals."

The Constitution of the State of Maine provides that "the districts shall conform, as near as may be, to county lines, and be apportioned according to the number of inhabitants." And WHITMAN, J., in construing that language, says: "The words 'as near as may be,' show that something was to be left to the discretion of the legislature, and are to be regarded as in some measure directory; and not containing a mandate of a nature so explicit as that obedience must follow without consideration."

The language of the Constitution in that State is even more explicit than in the New York Constitution, for it provides that the apportionment shall be made "according to the number of inhabit-

ants," and yet the court in 18 Maine, 460, in declining to interfere with an apportionment, say: "If such power should be abused in any case, the remedy is with the people. Those guilty of any such outrage will be very likely to become in time the victims of their own misconduct. In popular governments this, and the right which it may be believed the people will exercise of displacing bad servants, are the great checks to the abuse of power."

In *Prouty* v. *Stover* (11 Kan., 261) the court, in discussing this question, say: "An apportionment cannot be overthrown, because the representatives are not distributed with mathematical accuracy according to the population. Something must be left to the discretion of the legislature; and it may, without invalidating the apportionment, make one district of a larger population than another. It may rightfully consider the compactness of territory, the density of population, and, also, we think, the probable changes of the future, in making the distribution of representatives."

It will be seen that in construing constitutional provisions like the one under consideration, where the legislature have a discretion in making the apportionment, the courts have not regarded themselves as authorized to review that discretion. Any other construction would make the apportionment to depend upon the discretion of the courts, which have not been invested by the Constitution with any discretionary power upon this subject, and take the same from the legislature where the Constitution has so plainly lodged it.

Again, this discretion has always heretofore been exercised by the legislature without interference from the judicial department of the State, which furnishes a strong reason for holding that the people, by universal consent, have considered that that power is lodged with the legislature, and that, too, when the enumeration showed greater inequalities of representation than any of which the relator in this case complains.

In the apportionment of 1875 Orange county, with a population of 82,225, was awarded two members of assembly, while St. Lawrence county, with a population of 78,014, was awarded three members, Suffolk county, having a population of 50,350, was given one member, while Cattaraugus, having only 45,737, was given two members, and Washington, with a population of 46,330, was given

two members, and Niagara, with 47,620, Otsego, with 48,987, and Wayne, with 47,567, were each given two members, so the list might be multiplied.

From these figures it will be seen that the legislature has uniformly exercised this discretion, and that, too, without their acts being questioned in the courts as unconstitutional. Reference to these inequalities are not made for the purpose of offsetting one wrong against another, but rather to show that such irregularities have not been regarded as such an abuse of the discretionary power vested in the legislature as to render their apportionment unconstitutional and void. I am not unmindful of the fact that a different conclusion has been reached by a majority of the judges of the General Term of the fifth department upon some of the questions involved in this motion. But that decision did not involve the restraining of a State officer from the discharge of a statutory duty imposed upon him, the performance of which is a necessary prerequisite to the holding of an annual election in the State for the election of members of assembly.

It is true that the motion before us asks the mandatory process of this court, compelling the Secretary of State to issue notices of election of members of assembly, in pursuance of the provisions of chapter 208 of the Laws of 1879, but we have already seen that if chapter 397 of the Laws of 1892 is unconstitutional by reason of the inequalities of representation, that the provisions of chapter 208 of the Laws of 1879, based upon the enumeration of 1875, as the population of the State then was, would be subject to the same criticism and condemnation.

In a matter of such grave importance, so far-reaching in its consequences, the court should not resort to this extraordinary power of injunction and *mandamus* against a co-ordinate department of the government, except in a case where the unconstitutionality of the law under which the administrative officer is required to act, is free from reasonable doubt.

In *Ex parte McCullum* (1 Cowen, 550), SAVAGE, J., says: " Before the court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt." An act of the legislature cannot be set aside as

unconstitutional, unless its incompatibility with the Constitution is manifest and unequivocal."

In *People ex rel. Wood* v. *Draper* (15 N. Y., 532–545), the court say : "There is room for much bad legislation and misgovernment within the pale of the Constitution ; but whenever this happens, the remedy which the Constitution provides, by the opportunity for frequent renewals of the legislative bodies is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the legislature any other than public motives for their acts."

In *People ex rel. Burrows* v. *Supervisors* (17 N. Y., 235), the court uses this language : " Some respect is due to the opinion, even, of a co-ordinate power of the government. A legislative act is not to be declared void upon a mere conflict of interpretation between the legislature and the judicial power. Before proceeding to annul by judicial sentence what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any reasonable intendment or allowable presumption."

Within these rules of interpretation it is difficult to see how this act can be declared unconstitutional and void by this court.

I am, therefore, of the opinion that this motion should be denied.

Motion denied, with costs and printing disbursements.

HERRICK, J., concurred.

HERRICK, J. :

The relator asks that a *mandamus* be issued by this court directing the defendant to issue election notices to the clerks of the respective counties of the State, and that he embrace in said election notices the members of assembly required and allowed to be voted for under the apportionment act of 1879, known as chapter 208 of the Laws of 1879, and that he be restrained from accepting and filing certificates of the division of counties into assembly districts under the apportionment act of 1892, known as chapter 397 of the Laws of 1892, and restraining him from doing anything to carry into effect said chapter 397 of the Laws of 1892, upon the ground that said act is unconstitutional and void.

The defendant, by the attorney-general of the State, maintains the constitutionality of the act of 1892, and calls attention to the

fact that the act of 1879 is subject, in some respects, to the same criticism that is passed upon the act of 1892.

It will be seen at once that the questions involved are of grave moment, and of great public importance. The public interests imperatively demand a final determination of this controversy by the court of last resort at as early a date as is consistent with due and proper deliberation. The election is to be held November eighth; the Court of Appeals meets October third.

This court is now in session engaged in hearing cases, and will be so engaged for some time to come; to wait until it adjourns and then take up this case for examination and determination, will postpone the decision until too late a date to permit of its being taken to the Court of Appeals in time to have it heard and decided before election. Neither can I, during the term of the court, make such an examination of the case as its importance demands, or, in justice to the court of which I am a member, attempt, during the session, to formulate an opinion upon questions of law so grave as are here involved.

The General Term of the fifth department, in the case of the *People ex rel. Pond* v. *The Board of Supervisors of Monroe County*, by a divided court, has decided some, but not all, of the questions involved in this proceeding. I have read the very able and learned opinions by the several members of the court in that case, but am not prepared, without further examination and reflection, to either concur in or dissent from the determination arrived at in that case. But if the court is correct in its reasons for its decision in that case, it seems to me that it must necessarily dispose of this, because, as was pointed out by the attorney-general, the same vice as to inequality in the apportionment of members of assembly exists in the apportionment act of 1879 as is alleged in regard to the act of 1892. If the act of 1892 is void, because the members of assembly have not been "apportioned among the several counties of the State  *  *  * as nearly as may be, according to the number of their respective inhabitants" (sec. 5, art. 3 of Constitution), then the act of 1879 is void for the same cause, and there is no reason why the court should command the Secretary of State to proceed under that act instead of the one passed in 1892.

Without, then, at this time expressing any opinion as to the con-

252     PEOPLE ex rel. PENN. R. R. CO. v. WEMPLE.

THIRD DEPARTMENT, SEPTEMBER TERM, 1892.

stitutionality of either law, and for the purpose of expediting the final determination of the questions involved, I unite with Mr. Justice MAYHAM in deciding against the application for a *mandamus*. Let a decree be entered accordingly.

PUTNAM, J., not acting.

Motion for a *mandamns* and injunction denied.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE PENNSYLVANIA RAILROAD COMPANY v. EDWARD WEMPLE, as COMPTROLLER OF THE STATE OF NEW YORK.

*Taxation — of foreign corporations — the business of a railroad company consisting wholly of interstate commerce, is not taxable.*

In a proceeding by writ of *certiorari* to review the decision of the comptroller of the State of New York in assessing, under chapter 542 of the Laws of 1880, and the acts amendatory thereof, a tax upon a railroad company, it appeared that the company was a foreign corporation, having terminal facilities in New York city, owning and leasing real estate there, employing workmen and keeping money in banks of that city, but that all these matters were only incidental to its business, which was that of forwarding and receiving passengers and freight between that and other States.

The comptroller sought to sustain the tax as a tax upon the "business" of the railroad done in the State of New York.

*Held*, that the railroad company was not subject to tax.

That the business done by it in the State of New York was interstate commerce.

That the instruments used in that State to carry out its engagements did not constitute a separate business which was taxable.

That necessarily a part of the business of its interstate commerce was carried on in that State, but that none of such business was carried on wholly within that State.

CERTIORARI issued upon the petition of the Pennsylvania Railroad Company to Edward Wemple, as Comptroller of the State of New York, to review an account settled by him against it for taxes and penalties, under chapter 542 of the Laws of 1880, and its amendatory and supplementary acts, for the sum of $40,886.89, a revision of the settlement having been refused after a rehearing, and the taxes and penalties having been paid under protest.