State ex rel. v. Malone.

## STATE *ex rel.* GANN *v.* MALONE.*

### (*Nashville.*    December Term, 1914.)

1. **SHERIFFS AND CONSTABLES. Term. "Vacancy." Death before qualification.**

Under Const., art. 7, sec. 1, providing for the election of the sheriff for the term of two years, section 2, providing that if a vacancy occurs in the office of sheriff, subsequent to an election, it shall be filled by the justices, and section 5, providing that the term of the officer shall be computed from the first day in September next succeeding the election, that no appointment to fill a vacancy shall be made for a period extending beyond the unexpired term, and that every officer shall hold office until his successor is elected or appointed and qualified, the justices cannot appoint a successor to one who was elected sheriff but died before he qualified, since there can be no appointment unless there is a vacancy, and there can be no vacancy so long as the former sheriff is prolonged until the qualification of his successor; the word "vacancy" being used in its ordinary sense as meaning empty of an incumbent (citing Words and Phrases, First and Second Series, Vacancy). (*Post, pp.* 153-164.)

Code cited and construed:    Secs. 1118, 4889 (S.).

Cases cited and distinguished:    Johnson v. Mann, 77 Va., 265; Chadduck v. Burke, 103 Va., 694; King v. McLure, 84 N. C., 153.

Cases cited and disapproved:    Childrey v. Rady, 77 Va., 518; Owens v. O'Brien, 78 Va., 116; Maddox v. York, 21 Tex. Civ. App., 622; Riddell v. School District, 15 Kan., 168; Campbell

---

*As to vacancy in office by death of person elected thereto before beginning of his term, see note in 14 L. R. A., 858. And for the effect of the death of a person elected before taking office, or of his failure to qualify, see note in 50 L. R. A. (N. S.), 374.

On the question of the term of office of one appointed or elected to fill vacancy, see note in 50 L. R. A. (N. S.), 336.

Upon the purpose and effect of provision that incumbant shall hold his office until his successor is elected and qualified, see note in 50 L. R. A. (N. S.), 365.

State ex rel. v. Malone.

v. Dotson, 111 Ky., 125; Olmstead v. Augustus, 112 Ky., 365; Dixon v. Candill, 143 Ky., 623.

Cases cited and approved:  Condon v. Maloney, 108 Tenn., 83; State v. Slagle, 115 Tenn., 336; Richardson v. Young, 122 Tenn., 471; State ex rel. Loring v. Benedict, 15 Minn., 198; Tappan v. Gray, 9 Paige, N. Y., 507; People v. Van Horn, 18 Wend. N. Y., 515; State v. Harrison, 113 Ind., 434; People v. Ward, 107 Cal., 236; State v. Askew, 48 Ark., 82; Baxter v. Latimer, 116 Mich., 356; Kimberlin v. State, 130 Ind., 120; State v. Henderson, 4 Wyo., 535; Johnson v. Mann, 77 Va., 265; People ex rel. Battle v. McIver, 68 N. C., 467; Lawrence v. Hanly, 84 Mich., 399; State ex rel. Hoyt v. Metcalfe, 80 Ohio St., 244; Com. ex rel. Broom v. Hanley, 9 Pa., 513; State ex rel. Atty.-Gen. v. Dabbs, 182 Mo., 359; Kline v. McKelvey, 57 W. Va., 29; Smith v. Reppard, 69 W. Va., 211; State ex rel. v. Wilkinson, 124 La., 655; State ex rel. v. Murphy, 32 Fla., 138.

2. **OFFICERS.   Term.   Vacancy.**

Under those sections, where an appointment is made to fill an unexpired term, there is a vacancy at the end of the term, since the appointment was only for that time, though the appointee must continue to perform the duties as an officer holding over, rather than under a prolonged term, as in the case of an officer elected for a definite term and until his successor was qualified.  (*Post, pp.* 164-167.)

Case cited and distinguished:   State ex rel. Kenner v. Spears, 53 S. W., 247.

Cases cited and approved:  Powers v. Hurst, 21 Tenn., 24; Brewer v. Davis, 28 Tenn., 208; Keys v. Mason, 35 Tenn., 6.

3. **OFFICERS.   Term.   Appointee to fill vacancies.**

Where the length of term only is fixed with no set date for its beginning or ending, and no reference to an unexpired term or to a vacancy in the term as distinguished from a vacancy in the office, an incumbent appointed to fill a vacancy holds for a full term, not merely for the unexpired portion of his predecessor's term.  (*Post, pp.* 167-169.)

State ex rel. v. Malone.

Constitution cited and construed:   Sec. 5, art. 7.

Case cited and distinguished:   Gold v. Fite, 61 Tenn., 237.

**4. OFFICERS.   Term.   Commencement.   Commission.**

Though an elective office is still a species of property, the title thereto comes from the people, and not from the commission of the executive or other formality, and the term of such officer may begin notwithstanding his failure to receive a commission. (*Post, pp.* 169-172.)

Constitution cited and construed:   Art. 6, sec. 11.

Code cited and construed:   Secs. 443, 444, 445 (S.); secs. 1153, 1305 (S.).

Cases cited and approved:   Bates v. Taylor, 87 Tenn., 319; State ex rel. v. Board of Inspectors, 114 Tenn., 516; Maloney v. Collier, 112 Tenn., 78; Malone v. Williams, 118 Tenn., 390; State ex rel. v. Wright, 57 Tenn., 237; Turney v. Dibrell, 62 Tenn., 235; Blackburn v. State, 40 Tenn., 690; Calloway v. Sturm, 48 Tenn., 764; Mayor, etc., of Nashville v. Thompson, 80 Tenn., 344; State v. Parchmen, 40 Tenn., 609; State ex rel. v. Trewhitt, 113 Tenn., 561.

---

### FROM SMITH.

---

Error to Chancery Court of Smith County.—A. H. ROBERTS, Chancellor.

L. A. LIGON, H. B. McGINNESS and J. N. FISHER, for plaintiff in error.

T. J. FISHER, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

At the regular biennial election in August, 1912, defendant M. J. Malone was elected sheriff of Smith county, for the constitutional term of two years, and on the first Monday in September of the same year, in the usual manner, he was duly qualified, and entered upon the discharge of the duties of his office. At the next regular election, in August, 1914, Malone and one Hackett were opposing candidates, and Hackett was duly elected, defeating Malone by a large majority. On August 14, 1914, eight days after Hackett was so elected, he received a fatal wound and died that day, without having qualified. On the first Monday in September, the chairman of the county court called that body to meet on the 14th of the month to consider of this matter. The county court, conceiving that a vacancy in the office of sheriff had been caused by the death of Hackett, selected John B. Gann to fill it, and to serve as sheriff until the next biennial election. Gann qualified by executing bond and taking the oath prescribed by law, and then demanded the office of defendant Malone, and the county property in his charge, including the county jail. Malone refused to comply, on the ground that no vacancy had been created by the death of Hackett subsequent to his election and prior to his qualification, and that he (Malone) had the right to hold the office until the next regular election, under the provisions of our constitution applicable to the subject. Thereupon the present bill was filed to compel the delivery of the office and property to Gann, through the agency of a mandamus or of a

mandatory injunction. A demurrer was filed to the bill making the points that under the facts stated there was no vacancy, and defendant had the right to continue to hold his office. The chancellor overruled the demurrer, but under the discretion vested in him by Shan. Code, sec. 4889, granted an appeal to this court, and the case is here with errors assigned on the points of the demurrer.

The constitutional provisions applicable are the following:

"Art. 7, sec. 1. There shall be elected in each county, by the qualified voters therein, one sheriff, one trustee, one register; the sheriff and trustee for two years, and the register for four years.

"Sec. 2. Should a vacancy occur, subsequent to an election, in the office of sheriff, trustee or register, it shall be filled by the justices; if in that of the clerks to be elected by the people, it shall be filled by the courts; and the person so appointed shall continue in office until his successor shall be elected and qualified; and such office shall be filled by the qualified voters at the first election for any of the county officers. . . .

"Sec. 4. The election of all officers, and the filling of all vacancies, not otherwise directed or provided by this constitution, shall be made in such manner as the legislature shall direct.

"Sec. 5. Elections for judicial and other civil officers shall be held on the first Thursday in August, one thousand eight hundred and seventy, and forever thereafter on the first Thursday in August next preceding

the expiration of their respective terms of service. The term of each officer so elected shall be computed from the first day of September next succeeding his election. The term of office of the governor and of other executive officers, shall be computed from the fifteenth of January next after the election of the governor. No appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term. Every officer shall hold his office until his successor is elected or appointed, and qualified. No special election shall be held to fill a vacancy in the office of judge or district attorney, but at the time herein fixed for the biennial election of civil officers; and such vacancy shall be filled at the next biennial election recurring more than thirty days after the vacancy occurs.",

There can be no appointment in an elective office until a vacancy occurs. The controlling question then is: When, within the true intent and meaning of our constitution, does a vacancy occur? On the one hand, it is insisted that such event happens when one who has been elected to an office dies, either before qualification or afterwards. On the other, it is claimed there can be no vacancy caused by the death of the elected candidate before his qualification, when there is an incumbent holding over, pursuant to the provision of article 7, section 5, supra, that "every officer shall hold his office until his successor is elected or appointed, and qualified." In support of this latter view, it is insisted the office cannot be deemed vacant when it is in the possession of one designated by law to hold it

through a prolongation of his term until his successor can be not only elected or appointed, but also qualified. In support of the former, it is urged that one thus holding over does not hold as one having title to the office, but only as a tenant at will, to prevent interruption of the public business, and subject to be displaced whenever the the public authorities having control of the matter shall elect or appoint his successor, and the latter shall qualify, and that such successor may be so elected or appointed at the expiration of the number of years fixed by the constitution as the term of the office in question, and that there is no such thing as the prolongation of a term.

It is to be observed that some prominence is given to the term of office. By section 5 of article 7, the term of each and every civil officer to be elected by the people is fixed at a certain number of years, and the date from which it is to be computed distinctly stated, "the first day of September next succeeding his election," except as to the governor, and his term is to be computed from the 15th day of January next after his election. Furthermore, by the same section it is carefully provided that no appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term. But it is further provided that "every officer shall hold his office until his successor is elected or appointed, and qualified." Now, when Hackett died the situation was this: That death occurred in August during the term for which Malone had been elected, for which he had qualified, and in which

he was acting. So, it is not possible to hold that a vacancy at that time existed, since Malone was then lawfully in office serving his term. Did a vacancy occur on September 1, 1914, when Malone reached the end of the two years' term for which he had been elected? Was he then out of the office, or in the office? It cannot be doubted that he still lawfully held the office, under the very language of the constitution. If the office was lawfully held by him it was not and could not be vacant. If not vacant, the occurrence had not arisen for action of the justices under section 2 of article 7. It was then the duty of Malone to hold the office until a successor could be provided for him, and that could not be done until the next biennial election of civil officers.

What has been said is based on the assumption that we should give to the word "vacancy" its ordinary meaning. This must be done unless we can find a different meaning in the constitution itself or in our statutes. No different meaning is found in either. In the latter, it is laid down that any office in this State is vacated, by the death of the incumbent; by his resignation when permitted by law; by ceasing to be a resident of the State, or of the district, circuit, or county for which he was elected or appointed; by the decision of a competent tribunal, declaring the election or appointment void or the office vacant; by the sentence of the incumbent, by any competent tribunal in this or any other State, to the penitentiary, subject to restoration if the judgment is reversed but not if the incumbent

State ex rel. v. Malone.

is pardoned. Shannon's Code, sec. 1118. The under-
lying thought in each of these instances is that the
office is empty, or unfilled, except in the last, on the
occurrence of which the office is at once to become
empty. In addition, this court has held that an office
is empty or vacant when first created, and no one has
yet been appointed to fill it. *Condon* v. *Maloney,* 108
Tenn., 83, 65 S. W., 871; also, that the office at once
becomes empty of its incumbent or vacant, when he
accepts another office incompatible with the one then
held by him. *State* v. *Slagle,* 115 Tenn., 336, 89 S. W.,
326. And in *Richardson* v. *Young,* 122 Tenn., 471, 480,
550-565, 125 S. W., 664, it was held that the word "va-
cant" when applied to an office means "without an in-
cumbent," regardless of when or how it became vacant.
That this is the meaning ascribed to this word by the
great weight of authority in this country I need do no
more than cite Words and Phrases, First Series, 7259-
7263, and Second Series of same work, 1122-1127, and
the supporting cases therein referred to. To same
effect are the text-books. Mechem on Public Officers
sections 128, 130; Throop on Public Officers, section
328. See, also, the numerous cases cited in note on
page 368 of 50 L. R. A. (N. S.).

The cases upon the general subject are so numerous
that we shall not consume the time and space neces-
sary to make and preserve an analysis of them in this
opinion, as such an attempt would extend it to an un-
reasonable length. We may refer, however, to the
course of decision in the State of Virginia as illus-

trated by *Johnson* v. *Mann*, 77 Va., 265, and *Chadduck* v. *Burke*, 103 Va., 694, 49 S. E., 976, and as showing through the latter case the weight and strength of the precedents supporting the view we have announced. In *Johnson* v. *Mann* the opposite view was taken, but in the later case of *Chadduck* v. *Burke*, after announcing in different language the principle we have stated, the court continued:

"The regular term of the plaintiff in error expired, under the law, on the 1st day of January 1904; but he was just as fully authorized by law to hold the office and exercise the powers and perform the duties appertaining to it after that time, until his successor had been duly appointed and qualified, as he was before the expiration of his regular term. Indeed, the period between the expiration of his term and the qualification of his successor is as much a part of the incumbent's term of office as the fixed statutory period, when the law provides that he shall hold until his successor qualifies.

"As said in a California case, the plaintiff in error has, under the law, 'a fixed term and a contingent term.' He holds absolutely for the full period of his regular term, and contingently after that until his successor is appointed and qualified. It is said that the law abhors vacancies in public offices, and that great precautions are taken to guard against their occurrence. Hence it is, no doubt, that we find so generally adopted the provision that an incumbent shall, at the end of his term, continue to hold the office

and exercise its powers and perform its duties until his successor has been duly appointed and qualified. And also the statutory provisions for filling vacancies occurring during a term, which are emergencies often requiring prompt action. Such provisions are founded upon necessity to prevent vexatious embarrassments in the public service. As far as our investigation has gone, the great weight of authority upholds the view that, wherever the law provides for an incumbent holding over until his successor has been appointed and qualified, there is no vacancy in the office at the expiration of the fixed term. *Ex parte Lawhorne,* 18 Grat., 86; *Ex parte Meredith,* 33 Grat., 119, 122, 36 Am. Rep., 771; Mechem on Pub. Officers, section 126 et seq.; Throop on Pub. Officers, section 308 et seq.; *Tappan* v. *Gray,* 9 Paige (N. Y.), 507; *People* v. *Van Horn,* 18 Wend. (N. Y.), 515; *State* v. *Harrison,* 113 Ind., 434, 16 N. E., 384, 3 Am. St. Rep., 663; *People* v. *Ward,* 107 Cal., 236, 40 Pac., 538; *State* v. *Askew,* 48 Ark., 82, 2 S. W., 349; *Baxter* v. *Latimer,* 116 Mich., 356, 74 N. W., 726; *Kimberlin* v. *State* [130 Ind., 120], 29 N. E., 773, 14 L. R. A., 858, 30 Am. St. Rep., 208; *State* v. *Henderson* [4 Wyo., 535], 35 Pac., 517, 22 L. R. A., 754.

"The case of *Johnson* v. *Mann,* 77 Va., 265, is cited for the proposition that a vacancy exists which can be supplied by the appointing power for filling vacancies, when the incumbent of an office is holding over, by authority of law, until his successor qualifies. In that case Judge Richardson does employ language

justifying this contention; but its use does not appear to have been necessary to the decision of the question there involved, and the *dictum* is not sound, is contrary to the current of authority, and cannot be followed as a precedent.''

As to the special case before us, where the person elected to the office died before qualification and the officer in possession at that time held over, we refer to the following cases, all of which fully support the conclusion we have reached, viz.: *State ex rel. Loring* v. *Benedict,* 15 Minn., 198 (Gil., 153); *Kimberlin* v. *State,* 130 Ind., 120, 29 N. E., 773, 14 L. R. A., 858, 30 Am. St. Rep., 208; *People ex rel. Battle* v. *McIver,* 68 N. C., 467; *Lawrence* v. *Hanley,* 84 Mich., 399, 47 N. W., 753; *State ex rel. Hoyt* v. *Metcalfe,* 80 Ohio St., 244, 88 N. E., 738; *Com ex rel. Broom* v. *Hanley,* 9 Pa., 513; *State ex rel. Atty. Gen.* v. *Dabbs,* 182 Mo., 359, 81 S. W., 1148. There are cases in Kentucky to the contrary (*Campbell* v. *Dotson,* 111 Ky., 125, 63 S. W., 480; *Olmstead* v. *Augustus,* 112 Ky., 365, 65 S. W., 817; *Dixon* v. *Caudill,* 143 Ky., 623, 136 S. W., 1043); but these were based on a statute passed in 1850, as shown in 112 Ky. at page 370. We are referred, also, to *Childrey* v. *Rady,* 77 Va., 518, and *Owens* v. *O'Brien,* 78 Va., 116, as opposing authorities; but in the first of these it appeared that the trustees whose right was questioned in that case had never qualified by taking the oath of office, and held on many years after the term had expired for which they should have qualified, and the office was held vacant on both grounds; and in

the second of these cases the office was held vacant after two years because of failure to qualify by taking the oath of office. But, whatever view may be taken of these cases as opposing the conclusions we have stated, they are controlled by the more recent case of *Chadduck* v. *Burke, supra.* We are likewise referred to *Kline* v. *McKelvey,* 57 W. Va.; 29, 49 S. E., 896, and *Smith* v. *Reppard,* 69 W. Va., 211, 71 S. E., 115. In the last of these cases, Williams, presiding justice, said he did not see how there could be a vacancy when the incumbent was holding over under a law which provided that he should do so, "until his successor is elected and qualified," and there was no provision in the section for appointing a successor, but he yielded to the authority of *Kline* v. *McKelvey, supra,* the majority still adhering to that decision. In *Kline* v. *McKelvey,* the controversy was based on the following facts: In November, 1903, Kline was elected to membership in the board of education for the district of Davis in Tucker county, but failed to qualify within the time required by law, and was afterwards appointed by the superintendent of public schools of the county to the same position for the term for which he had been elected. At the date of the election McKelvey was holding the office by appointment to fill a previous unexpired term. When Kline was appointed by the superintendent of schools in the manner above stated, he demanded the office of McKelvey, whose only claim was that he was entitled to hold over until

131Tenn11

his successor was elected or appointed and qualified. On these facts it was held that Kline had the better right, and McKelvey was compelled to surrender the office. This case is probably distinguishable on the ground that McKelvey was appointed merely for the residue of an unexpired term; but, if not, it is contrary to the weight of authority.

The case of *State ex rel. Wilkinson,* 124 La., 655, 50 South., 616, cited, is apparently an opposing authority, directly in point. It is to be observed of this case, however, that it does not refer to or consider any of the great number of authorities that support the view which we hold to be the sound one. The decision seems to be based on the impolicy of permitting an extension of an official term to depend upon the caprice of a "police jury" to select, or omit to select, a successor. This reason could not apply to a constitution wherein stated recurring dates are fixed for the election of officers. The case of *Maddox* v. *York,* 21 Tex. Civ. App., 622, 54 S. W., 24, is an opposing authority, but that case declines to consider the array of authorities which we have not felt at liberty to pass by, and places its decision on the general ground that where the question is in doubt it is deemed best to decide in favor of that view which soonest returns the power of selection to the people. This general view seems to us not admissible, where the question arises upon the true construction of a written instrument, the constitution of a State, particularly where we find similar language in other constitutions construed by many dif-

ferent courts in the same way. A great weight of judicial opinion, we think, can rarely be disregarded with any degree of safety. Such preponderant opinion is itself the highest evidence of the soundness of the view so supported. On this theory largely depends the growth and development of our general system of law. *Riddell* v. *School District,* 15 Kan., 168, cited by counsel, does not really apply to the present controversy, because the question there under examination was whether the surety of an officer holding over was bound for a default occurring during such hold-over period. It was conceded in the opinion of the court that there was no vacancy during the hold-over period, but the surety was exonerated on the ground that he had become obligated only for the original term, and had the right to rely on the performance of duty on the part of the appointing power in selecting a successor in due time; and it was held that he was not bound to bear the burden of its failure to discharge this plain duty. It was conceded, however, in the opinion, that there were a number of authorities adverse to the conclusion of the opinion as to the liability of a surety under similar circumstances. *King* v. *McLure,* 84 N. C., 153, is referred to. That case arose in respect of the office of a constable. The substance of the decision is sufficiently expressed in the syllabus as follows:

"The provision in article 4, section 25, of the constitution that 'all incumbents of said offices shall hold until their successors are qualified' does not embrace the office of constable."

This case is, in the opinion, distinguished from the prior case of *People ex rel. Battle* v. *McIver,* 68 N. C., 467.

We are also referred to *State ex rel.* v. *Murphy,* 32 Fla., 138, 13 South., 705. That case, however, was determined on certain provisions of the constitution of Florida wholly different from our own, and it was furthermore conceded in that case that if the constitution of Florida had been like that of Pennsylvania (very much like our own) considered in the case of *Com. ex rel.* v. *Hanley,* supra, the conclusion would have to be different from that reached by the court.

We are referred to our own case of *State ex rel. Kenner* v. *Spears,* 53 S. W., 247, decided by the old court of chancery appeals, and affirmed orally by this court. The facts of that case were: At the August election, 1896, one Alton was elected and duly installed sheriff of Hawkins county, and served until the first Monday in April, 1898, when he resigned, leaving unused the remnant of his term running to the first day of September, 1898. Immediately upon the acceptance of this resignation, the justices of the county court appointed Spears to fill the vacancy so created. At the regular August election, 1898, one Rowen was elected sheriff for the next regular term beginning September 1, 1898, but he died before his qualification. Thereupon the justices of the county, conceiving that a vacancy in the office had occurred, after due publication, at the October quarterly term of the county court appointed Kenner to fill it. Spears contended that his

appointment to fill out the unexpired term of Alton entitled him to hold over until the 1st of September, 1900, after the general election in August, 1900, and that no vacancy was created by the death of Rowen after his election and before his qualification. The court held that under the constitution the appointment of Spears was only to fill the unexpired term of Alton, that instrument providing that "no appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term," and hence at the end of the Alton term so filled by Spears there was a vacancy, and no one designated by law being ready to fill it, Rowen, the elected person, having died, it was the duty of the county court to fill it, and that Kenner was properly appointed to that end. Said the court:

"The term of sheriff was two years. Alton resigned in April, and Spears was elected (by the county court, that is, appointed by the vote of the members of that body) to fill the vacancy. It became the duty of the qualified voters of Hawkins county to fill this office at the next general election in August, which they did. The sheriff-elect died before qualification. The duty was therefore still imposed upon Spears to hold the office and discharge its duties until the election and qualification of his successor. But inasmuch as he was only appointed under the provision of section 5, art. 7, of the constitution, to fill out the unexpired term, which expired on the first Monday of September, after that there existed another vacancy, which the county court

had the right to, and . . . did, fill; and we are therefore of opinion that the defendant, Spears, was, on and after the election (appointment) and qualification of the relator, Kenner, unlawfully usurping the office of sheriff of Hawkins county.''

The principle on which this decision rests is that, when the appointment is to fill an unexpired term, there is necessarily, under the constitutional provision last quoted, a vacancy at the end of the term, because the appointment extends only so far, but that the appointee must, as the person designated by the constitution for the purpose, continue to discharge the duties of the office until the election or appointment of some one to fill the vacancy.

It would thus appear that one appointed to fill an unexpired term continuing to perform the duties of the office after the expiration of the term would not hold as under a prolongation of his term, but only as a temporary holder of the office until an ascertained vacancy could be filled by a designated authority.

There is a distinction between the nature of the holding over of one appointed or elected to fill out an unexpired term, and that of an officer elected by the people for a full term; the latter falling under the rule that, if no one has been provided by election and qualification to take his place when the term of years has run out for which he was elected, there is no vacancy, and he continues to hold his office until in due course his successor is elected or appointed, the length of time he shall so hold over being dependent upon

the provisions of the constitution or statutes, as the case may be, for the supplying of a successor; that is, by election at the end of the hold-over term, or by appointment in case he should resign, die, be removed, or the office become otherwise bereft of an incumbent and so vacant.

The difference seems to rest on the distinction between a vacancy in the office, and a vacancy in the term. Prior to our constitution of 1870, the vacancy where one occurred was not in the term but in the office, and one appointed or elected to fill a vacancy held, not for the unexpired term, but for a full original term of two years, four years, or whatever time might be assigned to the office. This is illustrated by the cases of *Powers* v. *Hurst*, 2 Hump. (21 Tenn.), 24; *Brewer* v. *Davis,* 9 Hump. (28 Tenn.), 208, 49 Am. Dec., 706; and *Keys* v. *Mason,* 3 Sneed (35 Tenn.), 6; and particularly the case last mentioned, and the case next prior thereto. In *Powers* v. *Hurst* the matter appears in a double aspect, since in that case it appeared there was a brief appointment to fill the vacancy in the office of county register until the next general election for any office, which was about one year later, when Hurst was elected, not for the unexpired portion of the four years' term for which his deceased predecessor had been elected and qualified, but for a whole term of four years.

We should pause here to note that the rule is general that when the length of the term, merely, is fixed, with no set time for its beginning, or no date for its

ending, and no reference to an unexpired term, or to a vacancy in the term of office, as distinguished from a vacancy in the office itself, it is considered that upon the happening of a vacancy the office reverts to the people, or sovereign, and when again vested it is not for an unexpired term, but for the full term. See cases cited in note to 50 L. R. A. (N. S.), 339-343.

The cases just cited from 21, 28, and 35 Tennessee, arose under our constitution of 1834. The constitution of 1870, however, added to the provisions of article 7 what is now section 5 of that article quoted supra. This section, among other features, added the provision that ''no appointment or election to fill a vacancy shall be made for a period extending beyond the unexpired term,'' which meant, in the light of the cases last referred to, that no such appointment or election should bestow any right to the office beyond the end of the unexpired term, thus abrogating the rule previously laid down in the three cases referred to.

But all of section 5 was new, except so much of the hold-over provision as applied to the officers referred to in section 2 of article 7. The overwhelming weight of authority, construing and applying identical, or clearly similar, provisions in constitutions and statutes, is such as we have already given it, and the same so well expressed in *Chadduck* v. *Burke,* supra; That is its normal and general meaning, and can find with us the modified meaning applicable to appointments to fill unexpired terms, only, because of the nature of such a limited appointment, and the direct

command contained in the clause of section 5 on that subject.

We are cited to *Gold* v. *Fite,* 2 Baxt., (61 Tenn.), 237, as an authority adverse to the conclusion we have reached. The point of the reference turns upon the decision of the court as to the validity of the appointment of W. W. Goodpasture, as chancellor to succeed W. W. Ward, deceased. The facts were these: The fifth chancery division was created by the legislature in 1870, and in August of that year Ward was elected chancellor. He fell sick in November or December of that year, and after a protracted illness died on the 10th day of April, 1871. It is not stated whether he held a term of court at any point in the several counties composing his division, but it is stated that he did not hold any term, or sit in Smith county where the contest arose over the clerkship, which was the chief matter of controversy in the case. It is stated that it did not appear whether he was ever commissioned. In this plight of the record, the court, after stating that the question to be decided, on this point of the case, was whether the governor had the power to appoint Goodpasture as successor to Ward, said:

"Did a vacancy at that time exist? We have seen that Ward was elected chancellor. His right to the office was perfected by his election, and the fact, if it be so, that he did not receive his commission, owing to his accidental sickness, or it may be to the contest about the office, did not render him any less the chancellor of the division for the constitutional term; and

consequently the death of Ward did create a vacancy which the governor was authorized to fill by appointment.

It is true, as held in the case just referred to, that the commission of the governor is not essential to clothe with power a judge elected by the people; and it would be a serious misfortune if the law were otherwise, since, inasmuch as the governor cannot be compelled by mandamus to issue a commission (*Bates* v. *Taylor,* 87 Tenn., 319, 11 S. W., 266, 3 L. R. A., 316; *State, ex rel.,* v. *Board of Inspectors,* 114 Tenn., 516, 86 S. W., 319), the power to withhold the necessary evidence of title (if the commission were in fact necessary) would give to the governor a veto on the power of the people to elect their judges, or at least to command their services, and would place the judicial department in subordination to the executive department. At common law commissions or patents were necessary, because the king was the fountain of power, the office was a property or estate, and the king's commission or patent conferred title. 7 Bac. Abridg., 290, 291; 2 Bac. Abridg., 619, 620; 1 Brown & Hadly Comm., 209 (320); 5 Bac. Abridg., 398, 399; 1 Brown & Hadly Comm., 271 (421). In this State it is still held that office is a species of property. *Maloney* v. *Collier,* 112 Tenn., 78, 100, 101, 83 S. W., 667, and cases cited; *Malone* v. *Williams,* 118 Tenn., 390, 467, 468, *et seq.,* 103 S. W., 798, 121 Am. St. Rep., 1002, and cases cited. But the title comes from the people through the election, and not through a commission of the executive,

or other formality. *State, ex rel.,* v. *M. J. Wright,* 10 Heisk. (57 Tenn.), 237, 253. It is the duty of the governor, however, to issue commissions to the judges (Shan. Code, sections 1153, 1305), and they are greatly useful as *prima facie* evidence of title, and also for protecting third parties under judicial acts performed by persons holding them, although the commission may be void because issued without authority. *Turney* v. *Dibrell,* 3 Baxt. (62 Tenn.), 235; *Blackburn* v. *State,* 3 Head (40 Tenn.), 690; *Calloway* v. *Sturm,* 1 Heisk (48 Tenn.), 764; *Mayor, etc., of Nashville* v. *Thompson,* 12 Lea (80 Tenn.), 344. And, where the governor lawfully acts under section 11 of article 6 of the constitution, his commission, when he appoints a special judge, confers power to exercise the duties of the office, even if it does not confer title to the office.

Returning now to *Gold* v. *Fite,* the substance of the decision on the point referred to was that, inasmuch as the commission of the governor was not necessary to constitute chancellor Ward a judge, and to authorize him to perform his duties as judge, he was in truth the judge or chancellor of the division when he died, the incumbent of the office, and his death created a vacancy. The office was likewise vacant because Ward was the first chancellor of the division, and when he died there was no one in office to hold over. The office never had an incumbent until he was elected, and when he died it was left without any.

The case is different as to a sheriff. While he obtains his title from the election, as does the judge, his

enjoyment of his term of office does not begin until he qualifies by executing the bond and taking the oaths prescribed by law. Shan. Code, sections 443, 444, 445; *State* v. *Parchmen,* 3 Head (40 Tenn.), 609, 612. The constitution fixes the term, but leaves to the legislature the duty of prescribing the conditions on which he shall enter on it. *State* v. *Parchmen,* supra. If he die before entering upon the term, there can be no vacancy in the term because of such death, since he never was an incumbent. So the person in possession of the office, under a prior or prolonged term, will hold over, and will continue to so hold until his successor is both elected and qualified. This view was approved by this court in 1904, in the case of *State, ex rel.,* v. *Trewhitt,* 113 Tenn., 561, 568, 82 S. W., 480. There is not only no inequality in this result, but it is thoroughly in harmony with the general thought underlying the provisions of the constitution bearing on the subject, to place and keep the elective offices of the State in the hands of those elected by the people, and to cut down the appointing power to a minimum. It is perceived that this appointing power is clipped in every instance so that it cannot confer authority on any appointee for a period longer than two years; that is, longer than the recurrence of the next regular biennial election.

The decree of the chancellor must be reversed, the demurrer sustained, and the bill dismissed.