ALBERT W. KOHLER, DAVID L. HILLMAN, AND ARTHUR J. CHANDLER, PLAINTIFFS-APPELLANTS, v. CHESTER L. COBB, Jr., MAXWELL MOORE, FRANK GIAMPA, W. RUSSELL EPLER, AND THE BOROUGH OF AVALON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.

Argued December 7, 1959—Decided January 25, 1960.

*Mr. Marvin D. Perskie* argued the cause for plaintiffs-appellants.

*Mr. Samuel P. Orlando* argued the cause for defendants-respondents (*Mr. Samuel P. Orlando,* attorney; *Mr. Charles H. Nugent* and *Mr. William Russell Epler,* of counsel).

The opinion of the court was delivered by

SCHETTINO, J. Plaintiffs appealed from a Superior Court, Law Division, judgment dismissing plaintiffs' action in lieu of prerogative writs which sought a declaration that plaintiffs were members of the Avalon Sewerage Authority. Prior to argument in the Appellate Division, we certified the cause on our own motion.

Pursuant to *R. R.* 1:6–2 the appeal record contains an agreed statement in lieu of a record. The Avalon Sewerage Authority is a body corporate and politic created under the provisions of *N. J. S. A.* 40:14A–1 *et seq.* by ordinance passed on September 11, 1954 by the Borough of Avalon, a municipal corporation governed by a board of commissioners under the provisions of the Walsh Act, *R. S.* 40:70–1 *et seq.*

In January 1955 by resolution of the Board of Commissioners of Avalon plaintiff Chandler was appointed a member

of the Authority for a term of four years commencing February 1, 1955. On January 15, 1959 he was reappointed for a term of five years commencing February 1, 1959. On July 9, 1957 plaintiff Kohler was appointed to the Authority for a term expiring February 1, 1962. On April 24, 1959 plaintiff Hillman was appointed to the Authority to fill an unexpired term of one year. Certified copies of the resolutions appointing plaintiffs were filed with the Secretary of State. None of the plaintiffs has taken, subscribed to or filed with the Clerk of the Borough of Avalon an oath of office or any other oath. All the plaintiffs served as members of the Authority until the filing of this action. At oral argument we were informed that plaintiff Kohler had resigned and was no longer interested in the outcome of the appeal.

At a meeting held on July 22, 1959 defendant municipality adopted certain resolutions which declared the positions of plaintiffs as members of the Avalon Sewerage Authority vacant because of their failure to take an oath in accordance with Chapter 140 of the 1884 Laws of the State of New Jersey (*R. S.* 40:46–19). By separate resolutions, defendants Moore, Cobb and Giampa were designated members of the Avalon Sewerage Authority to fill the positions to which plaintiffs had been appointed.

Plaintiffs on the 24th day of July 1959 filed a complaint in lieu of prerogative writs to establish their title as members of the Authority and to declare the resolutions passed on July 22, 1959 null and void. At that time they obtained an order to show cause with temporary restraints expiring August 4, 1959. On the return day, plaintiffs and defendants, through their respective attorneys, agreed to submit the cause on the pleadings and affidavits as if cross motions for summary judgment were made.

The trial court found that plaintiffs "failed to take and subscribe the oaths required by Chapter 1 of the title *Oaths and Affidavits* (41:1–1 *et seq.*); and * * * that such oaths were not filed with the Clerk of the Borough of Avalon as required by *N. J. S. A.* 40:46–19; * * *" and on

August 7, 1959 entered judgment dismissing the complaint with prejudice and dissolving the restraints.

At argument, counsel were requested to submit their views on whether the oath provisions were directory or mandatory. Subsequent to argument, memoranda were submitted by them.

The basic question involves the applicability of *R. S.* 40:46–19 (requiring the taking of an oath within a certain time) to members of a sewerage authority created by a municipality pursuant to *N. J. S. A.* 40:14A–1 *et seq.,* entitled "sewerage authorities law."

*R. S.* 40:46–19 provides:

"In addition to any official oath that may be specially prescribed, every person elected or appointed to any office in any municipality shall, before assuming such office, take and subscribe the oaths required by chapter 1 of the title Oaths and Affidavits (§ 41:1–1 *et seq.*). The oaths shall be filed with the clerk of the municipality to be preserved by him. The clerk of the municipality shall have power to administer such oaths, but shall not receive a fee therefor.

Upon the failure of any officer to take, subscribe, and file such oaths as hereinbefore provided, within thirty days after the commencement of his term of office, including those elected or appointed to fill vacancies, his office shall be deemed to be vacant."

Plaintiffs contend that this statutory provision cannot apply to the Avalon Sewerage Authority as plaintiffs were not appointed "to any office in any municipality." Additionally they contend that as the Sewerage Authorities Law also empowers a county to set up a county sewerage authority, *R. S.* 40:46–19 could not apply to that authority as members of a county sewerage authority would take their oaths pursuant to *R. S.* 40:21–8. The latter statute provides for the taking of an oath by any person elected or appointed to a county office before assuming his office but does not provide for a vacancy in the county office if the oath is not taken within a certain time. Thus, conclude plaintiffs, there would be a legislative discrimination between the members appointed by a municipality and those appointed by a county. Plaintiffs finally contend that the oath

requirements are directory and failure to take the oaths does not create a vacancy in the office.

Defendants contend that *R. S.* 40:46–19 applies to plaintiffs and as the requirements of that statute are mandatory, their failure to take their oaths within 30 days after the commencement of the terms of office compels a finding that the offices are vacant.

The legislative plan for the creation and functioning of sewerage authorities is clearly set forth in the Sewerage Authorities Law. The Legislature authorizes a municipality to set up an agency (subsection 1 of *N. J. S. A.* 40:14A–2) to perform functions within its territorial limits which the municipality could have performed in its own name and under its ordinary departments.

█ Avalon Sewerage Authority was established under *N. J. S. A.* 40:14A–4(*b*) which empowers a single municipality to set up a sewerage authority. The nature and functions of a municipal authority similar to Avalon Sewerage Authority are set forth in the majority opinion, *Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456, 458–459 (1954) and in the minority opinion, 15 *N. J.,* at *page* 471. They are created to perform a public duty, namely, to provide disposal services for sewage and other wastes. *N. J. S. A.* 40:14A–2(1). In *Camden County* (at *pages* 464–465) this court said:

"The * * * authority, like the municipality which gave it being, is yet an agency or instrumentality for local administration in the vital field of sanitation and health, an area of government that is a primary responsibility of the municipality itself. * * * it is * * * the *alter ego* of the municipality in the service of this essential public need."

Throughout, the statute emphasizes the concept that the authority "shall be identified with its creator," the municipality (*Camden County, supra,* 15 *N. J.,* at *page* 460), even to the extent of providing for the dissolution of the authority by ordinance of the creating municipality with a consenting resolution of the members of the authority. *N. J. S. A.*

40:14A–4($h$). Additional examples of such intent are that the statute declares that the authority is a "public body corporate and politic" using in its title, as a means of identification, "all or any significant part of the name of the municipality," and shall consist of five members appointed by the governing body of the municipality. *N. J. S. A.* 40:14A–4($b$). The municipality's resolution or ordinance creating the authority may provide for compensation and expenses for the members of the authority. *N. J. S. A.* 40:14A–5($d$). *N. J. S. A.* 40:14A–9 authorizes a municipality to appropriate, lend or donate moneys to the authority. Sections 6($b$), 7(4) and 7(5) of *N. J. S. A.* 40:14A authorize the authority to acquire in its own name "but for the local unit" (here, the municipality of Avalon) sewerage disposal properties and facilities.

▮ The statute thus shows a close relationship between the municipality and the sewerage authority. *Cf. State v. Parking Authority of City of Trenton,* 29 *N. J. Super.* 335, 337 (*App. Div.* 1954). This leads to a clear conclusion that a member of a municipally created sewerage authority holds an office "in" the creator "municipality." Therefore a person appointed to such an office must comply with the oath provisions of *R. S.* 40:46–19.

We next consider whether the requirement to take the oath is directory or mandatory.

The importance and significance of an oath are fully set forth in *Imbrie v. Marsh,* 3 *N. J.* 578, 581 (1950) wherein Chief Justice Vanderbilt stated:

"* * * it has been well said 'No country can subsist a twelve-month where an oath is not thought binding; for the want of it must necessarily dissolve society,' *Omychund v. Barker,* 1 *Atk.* 21, 34 (*Ch.* 1744). The oath has played a significant part in government from the earliest times; thus we find Lycurgus saying to the Athenians: 'An oath is the bond that keeps the state together,' *Oratio in Leocratem* 80, and Montesquieu attributing the strength of the Romans to their respect for an oath; 'Such was the influence of an oath among these people that nothing bound them stronger to the laws. They often did more for the observance of an oath than they would have done for the thirst of glory or the love of

their country,' *The Spirit of the Laws*, *Book* VIII, *chap*. 13. Wigmore has traced the long history of the oath from its 'summoning of Divine vengeance upon false swearing,' to 'a method of reminding the witness of the Divine punishment somewhere in store for false swearing,' 6 *Wigmore on Evidence* 285. The importance of the oath in judicial proceedings cannot be over-estimated; the judge on the bench, the jury in the box, the attorneys at the counsel table, the witness on the stand, the court stenographer taking a record of the proceedings, and even the bailiffs when they retire to guard the jury in its deliberations, are all sworn to do their respective duties before they are permitted to act. The responsibilities of members of the Legislature and other state officers are certainly of no less importance to the public welfare."

Generally, the necessity for requiring an oath is not only that the oath imposes a solemn obligation upon the one taking the oath (*Imbrie, supra*) but also that the taking of the oath in many cases is the only evidence of the formal acceptance. Absent such act, the proper functioning of the public body might be precluded. 3 *McQuillin, Municipal Corporations* (*3d ed.* 1949), § 12.96.

■ Here the statute provides that upon failure to take, subscribe and file an oath within 30 days after the commencement of the term of office, "[*the*] *office shall be deemed to be vacant.*" (*R. S.* 40:46–19.) In *Douglass v. Board of Chosen Freeholders of Essex County*, 38 *N. J. L.* 214 (*Sup. Ct.* 1876), plaintiffs had been elected to office but did not take an oath of office within the time prescribed by statute. The statute provided in part (at *page* 215): "* * * and if any such person shall neglect to take such oath or affirmation for twenty days after his election or appointment, or shall neglect within such twenty days to give such security as may be required of him, he shall be considered as having declined said office, and the same shall be deemed vacant." Chief Justice Beasley stated (at *page* 217):

"But in the next place it was urged, that this requirement fixing the time in which the official oath is to be taken, is not mandatory, but is merely directory. * * * The general rule * * * is, that the prescription of the time in a statute is material, unless an

intent is clearly evinced from the nature of the act to be done or the general purport of the law, that it was not so intended. The application of this rule obviously leads to the conclusion that this limit of time in this act is mandatory, and must be submitted to. The whole section is framed for the purpose of giving it such efficacy, and *to ask the court to disregard the injunction as to time is, in substance, to ask the court to draw a pen through the entire section.* * * * it would be a simple usurpation of power for the court to say that he may enter upon the discharge of such duty upon taking an oath after the lapse of the period designated. The time set is a reasonable one; to conform to it is not even inconvenient; I can see no color of reason for refusing obedience to such a direction." (Italics ours.)

The reasoning of Chief Justice Beasley is particularly applicable to *R. S.* 40:46-19. To hold the requirements to be directory rather than mandatory would be judicial frustration of a legislative intent. We hold the requirements mandatory. *Annotation,* 158 *A. L. R.* 639, 658 (1945).

 Nor do we find any merit in plaintiffs' contention that members of a municipally created sewerage authority would be discriminated against as members of a county created sewerage authority would not be as strictly bound by the county oath provisions (*R. S.* 40:21-8) as are plaintiffs. We know of no constitutional interdiction which prevents the Legislature from setting up different requirements for municipal as distinguished from county officials. *Cf. Imbrie, supra.*

We hold that vacancies in the offices of the Avalon Sewerage Authority existed as the result of plaintiffs' failure to comply with the oath provisions of *R. S.* 40:46-19.

Judgment affirmed, but without costs.

BURLING, J., concurring in result.

BURLING, J. (concurring). I join in the view that *R. S.* 40:46-19 is mandatory and not directory in its terms and constitutes a condition precedent to a valid taking of the office to which it applies. Also, I agree that *R. S.* 40:46-19 obliges members of a municipal sewerage authority commission to take the oath prescribed by the statute although

my reasons for this conclusion are different from those expressed in the majority opinion.

As I indicated in my dissent in *Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456, 471 (1954), a sewerage authority created under *N. J. S. A.* 40:14A–1 *et seq.* is but another example of autonomous bodies created by the State or its subdivisions with valid legislative authority. A sewerage authority "is an independent entity 'in but not of' the parent [governmental unit]." *Camden County v. Pennsauken Sewerage Authority, supra, at page* 472. The *raison d'etre* of the governmental authority is to be independent of the body creating it, and in this manner operate for its limited purposes free of some of the restrictions which bind traditional governmental units. See *De Lorenzo v. City of Hackensack,* 9 *N. J.* 379, 385 (1952); *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235, 246 (1949); *State, Department of Civil Service v. Parking Authority of City of Trenton,* 29 *N. J. Super.* 335, 338–339 *(App. Div.* 1954). Thus I would conclude that the authority in question is an entity independent of its creator, the Borough of Avalon.

This does not mean, however, that a municipally created sewerage authority does not come within the definition of "municipality" as that word is used in *R. S.* 40:46–19. The Legislature apparently intended that persons assuming positions of public trust on the municipal level, persons who would be performing the functions of municipal government, should take the oaths required by *R. S.* 40:46–19. There is no reason to assume that the Legislature referred only to officers in cities, boroughs, townships and similar traditional units. When the governmental functions of these traditional units are passed over to independent bodies, certainly the responsibility, the position of trust, follows the function. It is just as logical to interpret the legislative intent in *R. S.* 40:46–19 to mean that the oath follows the responsibility. For this reason I would hold that a municipally created sewerage authority is a municipality for purposes of *R. S.*

40:46–19. Thus the plaintiffs, having failed to take the oaths prescribed by *R. S.* 40:46–19 within the time stipulated therein, are not entitled to the offices they claim.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—6.

*For reversal*—None.