Fred J. Munder, J.
There is no factual dispute in this matter. In the town election in Brookhaven Town in November, 1963 three Councilmen were to be elected. There were six candidates of whom the three receiving the highest number of votes would be elected. The respondent Francis C. Giaccone received the third highest number of votes, a fact certified by the Board of Elections. However, it is claimed that Mr. Giaccone, not being an owner of record of real property, was ineligible. (Town Law, § 23.) The petitioner John J. Foley, seeking re-election, received the fourth highest number of votes.
On December 31, 1963 at 11:57 p.m., Mr. Foley’s Cocouncilmen, whose terms were to expire by operation of law at midnight and who running for re-election received the fifth and sixth highest number of votes, resigned their offices.
Mr. Giaccone has conceded his ineligibility on Election Day leaving the sole question to be determined whether Mr. Foley is entitled to the office either by ignoring as a nullity Mr. Giaccone’s candidacy and election and declaring Mr. Foley the elected candidate or by declaring Mr. Foley a holdover incumbent.
The petitioner agrees that if the election in question had been a village election rather than a town election the construction of section 53 of the Village Law by the court in People ex rel. Stalter v. Lynch (219 App. Div. 1, affd. 245 N. Y. 534) would make his position, that he must be declared to be the elected candidate, untenable. But he says there is no section of the Town Law that is comparable to section 53 of the Village Law. The latter section provides that “ The person eligible and receiving the highest number of votes for an office shall be elected thereto ”. The court in construing that sentence in the Stalter case said: “in a case where the person receiving the highest number of votes is ineligible, to declare the person receiving the next highest number of votes elected would be subversive of the popular will (219 App. Div. 1, 3.)
*462 The petitioner argues that the Stalter decision should be limited in its effect to village elections and that the absence of comparable language in the Town Law implies a legislative intention to employ a contrary rule in town elections. The defect in this reasoning is the fact that section 53 of the Village Law is simply declaratory of the common law (29 0. J. S., Elections, § 243) and the common law is never abrogated by implication. Even 1‘ When * * * a statute is intended to abrogate a common law right or to confer a right not vested by the common law, it will be so construed as not to go beyond the letter; and not even to that extent unless it appears to be according to the spirit and intention of the act ”. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 301.)
The common-law rule is that no one may be declared elected unless he receives a majority or a plurality of the legal votes east at an election. That such a plurality or majority of the votes were cast for an ineligible candidate does not result in the • election of the candidate receiving the next highest number of votes (People ex rel. Furman v. Clute, 50 N. Y. 451, 465; see, also, 133 A. L. R 334). Such a result would be subversive of the popular will (People ex rel. Stalter v. Lynch, supra). Where an ineligible candidate receives the highest number of votes, or sufficient to elect him if he were eligible, the result is a failure of election and a vacancy in the office upon the expiration of the term of the incumbent. Whether or not a different result would obtain in the event the electorate had prior knowledge of the ineligibility of the candidate (People ex rel. Furmam v. Clute, supra, p. 461) need not here be considered. There is no suggestion that such was the case in this election.
The respondents Commissioners of the Board of Elections as the canvassing board properly certified the election of Mr. Griaccone. Theirs is a ministerial duty only and they may make no determination of the eligibility of a candidate. That determination is to be made in the first instance by a court (Matter of Funkhouser, 157 Misc. 400), in an action in the nature of quo warranta if the facts are at issue or in an article 78 proceeding where there is no disputed fact question. (Matter of Mapes v. Swezey, 278 App. Div. 959.)
Technically, in our situation the vacancy was not occasioned by ineligibility for that had not yet been declared by a court. Apparently Mr. Griaccone, realizing his ineligibility made no effort to qualify by filing his official oath (Public Officers Law, § 30, subd. 1, par. h; Town Law, § 25). The result however is the same for whether the vacancy arises by ineligibility or by failure to qualify the incumbent would ordinarily hold over and *463 the office would be deemed vacant only for the purpose of appointing a successor (Public Officers Law, § 5).
In the instant case the situation is complicated by the fact that the terms of three Oouncilmen were expiring on December 31,1963, and that no candidate was running to fill any particular vacancy. Ordinarily where there is a vacancy by expiration of term the incumbent will hold over until his successor is chosen and qualifies. (Public Officers Law, § 5.) Here, in order that there would be but one Councilman who might be considered to be the incumbent entitled to hold over, the other two, of the three Oouncilmen whose terms were expiring, resigned.
However, there is no efficacy in the maneuver. It may appear reasonable that the vacant office should be continued to be filled by the highest vote-getter of the defeated candidates but there is no authority for the employment of the device used here or any other method of selection to determine who should fill the vacancy in a situation of this kind.
The purpose of section 5 of the Public Officers Law is to insure a continuance of government where a vacancy occurs by expiration of term and there is a failure of election or appointment. It can be employed whenever the office vacated can be identified with a particular incumbent. In such a case the result would follow automatically. That would have been the situation if the Town of Brookhaven had established the ward system for the election of Oouncilmen. (Town Law, § 85.) Where, as here, the office vacated cannot so be identified it cannot be said that any of three incumbents is entitled to hold over (Matter of Mazzotti v. Swezey, 199 Misc. 987) nor can they choose among themselves or effect the same result by all but one resigning. Because they perform no duties independently of the Town Board (apart from delegated duties by direction of the board) and the Town Board can function with less than its full complement, there will be no interruption of government where only one eouncilmanic office is vacant.
It is concluded that the office of Councilman to which Mr. Griaccone would have been elected had he been eligible became vacant on January 1, 1964 and remains vacant until filled by appointment by the Town Board pursuant to subdivision 5 of section 64 of the Town Law and the qualification of the appointee. The petition is dismissed, without costs.