STATE of Tennessee, Upon Relation of **Rollin W. WYRICK, W.J. Haren, James Rogers and Ralph Benjamin, Relators, who are citizens and residents of the City of Rockwood, Roane County, Tennessee, Appellants,**

v.

**William R. WRIGHT, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Oct. 15, 1984.

Billy H. Leffew, Rockwood, for appellants.

James H. Harris, Loudon, Arnold, Winfrey, Simpson & Harris, for appellee.

## OPINION

FONES, Justice.

The chancellor allowed the citizens of Rockwood, Tennessee, to maintain this action quo warranto, to determine the right to two offices on the six member city council, although the district attorney general refused to allow the suit to be brought in his name.

### I.

Three at-large positions of City Councilman were on the ballot in the regular Rockwood election in June, 1983, for terms beginning July 1, 1983. The results were that Bert Pemberton received the most votes, Glenn Cole was second, and Jonathan Foust and Malcolm Peters tied for the third at-large position on the council.

On June 29, 1983, Cole suffered a heart attack and was confined to the intensive care unit in a local hospital. Because of the serious nature of his illness, Cole was unable to be sworn in as city councilman on July 1, 1983. On July 8, 1983, Cole died without taking the oath of office or assuming any of his duties as councilman.

At the regular city council meeting on July 18, 1983, William Wright was elected to the city council to fill the vacancy created by the death of Cole. At that time the

council consisted of only four members as the tie vote position was still vacant. There was a tie vote of two for and two against Wright, and the Mayor broke the tie by voting for Wright who was then sworn in as city councilman.

Three of the plaintiffs, Haren, Rogers and Benjamin were incumbents on the city council whose terms expired June 30, 1983. None of them sought re-election, but in their complaint they insisted that two of them were holdovers entitled to the position Cole was elected to, and to the tie vote position, until those vacant positions were filled by legal election and qualification.

When the chancellor heard the case in January, 1984, the third position had been resolved in favor of Peters because Foust withdrew, and the only question was the validity of the election of William R. Wright, Jr. by the city council on July 18, to fill the position to which Cole had been elected.

The chancellor held that Cole had been elected and issued a certificate of election and that the office of councilman was vested in Cole although he had not taken the oath of office; that a vacancy was created by his death and that the election of Wright by the city council was valid. In his ruling from the bench at the conclusion of the trial, the chancellor also held that there were no hold-over councilmen and therefore no person or persons to fill the vacancy created by the tie vote. The chancellor clearly indicated that he made that ruling to validate the composition of the July 18, 1983, Rockwood City Council that elected Wright, and to avoid having to select one of three incumbents of equal status and qualification, whose terms expired June 30, 1983.

In this Court, the threshold issue is whether the rule designed to prevent vacancies in public office, that incumbent public officials hold-over after their terms expire until such time as their successors are elected and qualify, applies to a vacated office that cannot be identified with a particular incumbent, such as at-large positions on a city legislative body. We agree with the result reached by the chancellor on that issue.

## II.

■ The Tennessee rule, and the rule adhered to in a majority of jurisdictions, is that, ordinarily, the death of an elected officer before qualifying for office does not create a vacancy in the office that can be filled by appointment or otherwise, but the incumbent continues in office until his successor is elected and qualified. *Hilliard v. Park*, 212 Tenn. 588, 370 S.W.2d 829 (1963); *Conger v. Roy*, 151 Tenn. 30, 267 S.W. 122 (1924); *State ex rel. Gann v. Malone*, 131 Tenn. 149, 174 S.W. 257 (1915); Annot., 74 A.L.R. 486 (1931). The cases that have announced this rule have all concerned the situation in which the incumbent holds a specific and identifiable office, such as sheriff or judge. The office to which Cole was elected, however, was an at-large office, and no particular incumbent, Haren, Benjamin or Rogers could be said to be *the* incumbent in this office.

*Pansmith v. Williams*, 201 Misc. 759, 106 N.Y.S.2d 11 (N.Y.Sup.Ct.1951), was a mandamus proceeding to determine the right to office of village trustee. There was a tie vote between two contestants in the annual election to fill the fifth position of the board of trustees. Because of the tie, this position remained vacant until April 2, 1951, the date that the terms of two of the trustees expired. On that date the Mayor arbitrarily appointed one of the incumbents to serve as the fifth board member until the vacancy created by the tie vote had been filled. The other incumbent whose term had expired continued to act as the hold-over trustee, claiming the right to fill the vacancy created by the tie vote. The court held the mayor had no authority to appoint one of the two trustees to act as a hold-over trustee when there was only one vacancy and, therefore, such action was arbitrary and a nullity. The court stated that "in the case of an office ... in which the terms of two incumbents expire at the same time ... no one is in a position to determine which of the

[incumbents] is entitled to hold-over." *Id.* at 13.

*Foley v. McNab*, 42 Misc.2d 460, 248 N.Y.S.2d 354 (N.Y.Sup.Ct.1964) was also a proceeding to determine eligibility to hold office. This case concerned a town election in which three councilmen were to be elected. There were six candidates of whom the three receiving the highest number of votes would be elected. The candidate who received the third highest vote total was later declared ineligible. Foley, who was seeking re-election, received the fourth highest vote total. Just before the expiration of their terms, Foley's co-councilmen, who had received the fifth and sixth highest vote totals, resigned their offices. Foley then claimed title to the vacant office as a hold-over councilman. The court rejected this contention, however, and stated the statute that governed the hold-over situation was only applicable when the vacated office could be identified with a particular incumbent. *Id.* at 357. The court further noted that although "[i]t may appear reasonable that the vacant office should be continued to be filled by the highest vote getter of the defeated candidates ... there is no authority for the employment of the device used here or any other method of selection to determine who should fill the vacancy in a situation of this kind." *Id.* The court stated that if the town had established a ward system for the election of councilmen, a different result would have obtained, but because the vacated office could not be so identified, none of the three incumbents was entitled to hold-over, nor could they achieve the same result by choosing among themselves.

■ We think the rationale of *Pansmith* and *Foley* is sound and we adopt an exception to the general rule of *Malone*, that with respect to public offices that cannot be identified with a particular incumbent, there is no holding over beyond the end of the term.

■ Cole was elected to one of three at-large positions on the six-member Rockwood City Council, and the incumbent whose office he would have succeeded, if

he had qualified, cannot be identified. Also, there was no identifiable hold-over incumbent to keep the third at-large position, that was involved in the tie vote, from becoming vacant on July 1, 1983. Thus, the chancellor was correct in holding that the council that elected Wright was the full, legally qualified, Rockwood City Council on that date, July 18, 1983.

### III.

The chancellor erred in holding that Cole had assumed the office by virtue of his election, and the certification thereof, and that a vacancy was created by his death.

Article IV, section 2 of the Rockwood City Charter sets forth the terms and qualifications for the office of councilman. The provision specifically states that *"[b]efore entering upon the duties of their offices ... Councilmen shall take oath* before any officer authorized to administer oaths to discharge honestly and faithfully the duties of their respective offices." (Emphasis added.) *In State ex rel. Gann v. Malone*, 131 Tenn. 149, 172, 174 S.W. 257 (1915), the Tennessee Supreme Court stated that when the statute required the taking of an oath of office, the elected officer does not qualify and the term of office does not commence until the prescribed oath is taken.

Other authorities have also recognized that the statutory requirement of taking the oath of office is mandatory rather than directory and that the term of office does not commence until the oath is taken. *See City of Evansville v. Brown*, 171 Ind.App. 284, 356 N.E.2d 691 (1976); *Kohler v. Cobb*, 31 N.J. 369, 157 A.2d 681 (1960); *Hickey v. Hargraves*, 194 Ark. 64, 105 S.W.2d 88 (1937); *Logan County Bd. of Educ.*, 241 Ky. 166, 43 S.W.2d 691 (1931); *see also* R. Cooley, *Handbook of the Law of Municipal Corporations* § 57, at 206–07 (1931); 3 E. McWuillen, *The Law of Municipal Corporations* § 12.97 (3d ed. 1982); 2 C. Sands & M. Libonati, *Local Government Law* § 10.18 (1981).

It follows that the office to which Cole was elected was vacant on July 1, 1983, and because of Cole's failure to take the oath and qualify prior to his death on July 8, it remained vacant until filled by the election of Wright on July 18, 1983, in accord with Article IV, Section 3 of the Rockwood City Charter.

The judgment of the trial court is affirmed. Costs are adjudged against plaintiffs.

COOPER, C.J., and BROCK, HARBISON, DROWOTA, JJ., concur.