In the Matter of the Application of the People ex rel. John H. Derby, Respondent, *v.* Frank Rice et al., Composing the Board of State Canvassers, Appellants.

A writ of mandamus may be granted to compel ministerial officers to exercise their functions, where a specific duty has been imposed upon them by law and they refuse to perform it, or do not conform to the law, or when some legal right has been refused by them.

*It seems,* where a peremptory mandamus is applied for, which by its terms acts as a restraint upon a board of state officers, engaged in the performance or about to perform a duty imposed by statute, and it is sought for to be used as a restraining order or injunction, the limitation upon the granting of such an injunction imposed by the Code of Civil Procedure (§ 605) applies; that is, it "shall not be granted except by the Supreme Court at a General Term."

The office of a board of state canvassers is purely ministerial, no judicial powers are vested in them. They are simply authorized to compute the votes cast throughout the state and determine, upon statements made up from the returns of the boards of county canvassers, what persons have received the greatest number of votes, and upon the statements so made they must declare those persons to be duly elected. No other evidence may be received or used and no declaration may be made by such a board except as based upon a determination arrived at by the statements made up by it in an arithmetical manner from the various official returns before them.

The statement returned by a board of county canvassers to the state board may not lawfully contain anything save the whole number of votes given in the county, the names of the candidates, and the number of votes given for each, and this must be made up solely from the original statements of the canvass returned by the inspectors in each and all of the election districts of the county.

Such a board has no authority to transmit with their official return any paper attacking the validity of the election, and if such a paper is so transmitted the state board has no power to consider it.

(Argued December 11, 1891; decided December 29, 1891.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 7, 1891, which affirmed an order of Special Term directing a peremptory mandamus to issue.

The substance of the order and the facts, so far as material, are stated in the opinion.

*Isaac H. Maynard* and *Delos McCurdy* for appellants. The application for a mandamus should have been denied, because it asked for an order directing the state board to abstain and refrain from doing something which there is no proof that the board intended to do. (High on Extr. Remedies, 14; *Brown* v. *Duane*, 60 Hun, 98; 14 Am. & Eng. Encyl. of Law, 93, 105; *In re Whitney*, 3 N. Y. Supp. 838; *Thomas* v. *M. M. P. Union*, 121 N. Y. 45.) The relator's right to a peremptory writ must be determined upon the assumption that the opposing affidavits are true. (*People* v. *Fairman*, 12 Abb. [N. C.] 252; *People* v. *Board, etc.*, 64 N. Y. 627; *People* v. *Supervisors*, 73 id. 173; *People* v. *Cromwell*, 102 id. 477; *People* v. *Ecker*, 3 N. Y. S. R. 202; *People ex rel.* v. *Cady*, 2 Hun, 224; *People ex rel.* v. *Green*, 64 Barb. 162.)

*William A. Sutherland* for respondent. The state board of canvassers has no right to institute any inquiries as to irregularities at the polls. (*People* v. *Cook*, 8 N. Y. 94.)

*Joseph H. Choate, Matthew Hale, J. F. Parkhurst* and *Eugene Burlingame* for respondent, upon the same general points and authorities which appear in the case of *People ex rel. Sherwood* v. *State Board of Canvassers* (*ante*, page 360).

Gray, J.  In this matter, on certain affidavits, an order was made by the Supreme Court, at Special Term, directing the issuance of a writ of peremptory mandamus, commanding the state board of canvassers to issue a certificate of election, in accordance with the certified statements as to the result of an election for senator in the sixteenth senatorial district of the state, held on November 3, 1891, filed with the said board, and to make a determination of the result of said election thereupon, solely; disregarding and not considering any other papers of any other nature whatever relating to said election, or the result thereof, and without taking any proofs, or considering any papers, with reference to the determination of said election, except the said certified statements made pursuant to statute by the boards of county canvassers of the counties composing the said senatorial district.  The moving papers, upon which the order I have just referred to, and largely quoted from, was granted, set forth a resolution passed by the board of canvassers of Rensselaer county to the effect that, in transmitting the statements of the votes cast at the recent election to the state officers, there should accompany them a certain protest and certain objections, and that the attention of the board of state canvassers be called to the same and they be requested, before issuing a certificate of election to the office of senator, to consider such protest and proofs and such further proofs as may be presented.  They alleged the receipt, filing and proposed submission by the state officers of the statement of the county board with the accompanying protest and papers.  The moving papers further showed that the protest, objections, or statements, referred to were based upon alleged violations of the election laws of the state, in that there were irregularities in and illegal acts committed at the election in question.  These violations of the laws are alleged to have been committed in the solicitation of votes within ten feet of the polling place, in the intimidation and bribery of voters, in the repeating of votes and in the failure of the returns to state the correct vote cast.  These matters are set forth in an affidavit by the opponent of the candidate

Derby, the relator here, and he makes the offer to prove his allegations. The affidavit of the secretary of state, a member and the chairman of the state board of canvassers, alleges that the board had not proceeded to act upon the statements from Rensselaer county because of the legal proceedings and that it has not refused, neglected, nor threatened to refuse or neglect " to consider the statement in the manner required and allowed by law," that there has been no refusal " to issue a certificate to the office of senator of the sixteenth senatorial district to any person, nor has said board, nor any member thereof, stated what said board intended to do, etc.,   *   *   * and, in deponent's opinion, it is the intention of said board to proceed in good faith to the discharge of the duties imposed upon them by law, etc.; that no demand has been made upon the state board by the relator herein that a certificate of election should be issued to him."

If we were free to consider and determine the right, or propriety, to order the writ of mandamus to issue in this matter, we should not hesitate to hold that it should not have been granted by the Supreme Court at a Special Term. Though the writ is in form one of peremptory mandamus, yet it is by force of its terms and commands in effect an order which restrains a board of state officers engaged in the performance of, or about to perform, a duty imposed by the statute. Upon the proofs it did not appear that the board of state officers, against whom the application was made, had refused, or neglected, to perform any duty imposed by law, or that they intended to commit any illegal act, not even that they had refused the relator any legal right; hence there was no occasion for, nor propriety in, a peremptory writ of mandamus, which issues in order to compel ministerial officers to exercise their functions; or where a specific duty has been imposed by law and they refuse to perform it; or they do not conform to the law; or when some legal right has been refused. But, passing over the necessity for the writ upon the grounds exhibited by the moving papers, if it is proposed to use it as a restraining order, or injunction, which certainly was its

province in this case, then its issuance ought to be subject to the same statutory provision which imposes a restriction upon injunctions to restrain state officers. That is found in section 605 of the Code of Civil Procedure, which reads that "where a duty is imposed by statute upon a state officer, or board of state officers, an injunction order to restrain him, or them, * * * from the performance of that duty * * * shall not be granted, except by the Supreme Court at a General Term thereof, sitting in the department in which the officer or board is located, or the duty required to be performed." There is not enough in the case to overcome the legal presumption that the state officers would perform their statutory duties, and until that should appear, a peremptory mandamus would not lie. We think that this provision of the Code is applicable to all cases where the object of the proceeding is to restrain state officers, or boards, while engaged in the performance of a legal or statutory duty, and that its effect cannot be evaded by issuing a writ of mandamus, by the terms of which the state officers are restrained. The name does not alter the effect. The inhibition of the statute is jurisdictional, and an order not granted as prescribed is a nullity. However, because of the stipulation of the parties, which accompanies the record here, and because of the failure of the defendants to the proceeding to raise the objection, we have concluded to overlook the question of jurisdiction and to determine the questions at issue, upon their merits. We think, too, that the gravity of a question, which relates to the functions, duties and powers of the board of state canvassers, renders its determination by us appropriate at this time. Its importance is of the highest order.

There ought not to be any divergence of opinion, and there cannot be, as to what is the nature of these functions and duties, or what the limit of those powers. No judgment, which proceeds upon direct methods of reasoning, and which guides itself by the written law of the state, can fail to reach the conclusion that the office of these boards of canvassers is purely a ministerial one. Upon them devolves by statute the

obligation to fulfill precise functions. They are charged by the statute with absolute and certain duties. What those duties are to-day, they have always been since the legislature, acting under the authority of the Constitution of the state, undertook to direct the manner in which elections by ballot should be conducted. Citing the words of the law, the board shall, upon the certified copies of the statements made by the boards of county canvassers, proceed to make a statement of the whole number of votes given at such election for the various offices; each of which statements shall show the names of the persons to whom such votes shall have been given for either of the said offices, and the whole number of votes given to each, distinguishing the several districts and counties in which they were given. They shall certify such statements to be correct and subscribe the same with their proper names. Upon such statements, they shall then proceed to determine and declare what persons have been, by the greatest number of votes, duly elected to such offices, or either of them. They are then to make and subscribe on the proper statement a certificate of said determination, and shall deliver the same to the secretary of state. In that language is defined the scope of the duty of this board. There is no ambiguity in expression, nor are there any words of doubtful import. Nothing is left for any work of interpretation. The plain reading of the words of the law must be followed, and that inevitably forbids us to entertain an opinion that any judicial powers are vested in the board of canvassers. The members convene, under the statute, to determine upon the statements, which they must make from the statements returned by the boards of county canvassers, what persons have been by the greatest number of votes elected to office. They are not, in any general sense, to determine. They must determine upon such statements as they have made up in an arithmetical manner from the various official returns before them. It is upon such statements, so made, that they must declare what persons have been duly elected. That is the evidence, and all of it, which the statute permits in connection with the election and a declaration by

the board of canvassers of its results. No declaration can be made except as based upon a determination reached upon that particular evidence.

There is no latitude afforded by the law for any determination by boards of canvassers outside of the official returns, which the statute prescribes as the duty of the county canvassers to make and file. Those returns of the county canvassers may consist solely of statements by them, based upon an estimate of the votes cast for the various offices, as they appear upon the original statements of the canvass by the inspectors in each district. The statements returned by the county boards cannot lawfully contain anything save the whole number of votes given in each town and district, the names of the candidates and the number of the votes given to each. Thus it is perfectly evident, from the provisions of the statute, that the limits for the action of the state board of canvassers are fixed, and that there is an utter absence of warrant for their proceeding upon anything but the certified statements required by statute to be made and filed by the county boards, and then to be transmitted to the state officers. The board is called into a temporary existence by statute, and for the mere purpose of computing the votes cast throughout the state, as returned to them from the boards of the several counties, and to declare the result of such computation. It is but a part of the machinery constructed by the legislature for the purpose of determining and declaring the result of the votes cast at the election. It is a very essential part of the system devised for conducting elections by ballot; but its importance consists only in the fact that it is the mode selected for the determination and the declaration of the final results. To imply the possession of a power to determine otherwise than upon the evidence, which the statute provides for; to invest this board, so manifestly created for the fulfillment of a mere ministerial function, with any judicial powers, would be counter to the plain terms of the statute. In a government resting upon universal suffrage, the purity of the ballot and a correct count, and an exact return of the votes cast and counted, made in

strict compliance with the law enacted by the legislature for the conduct of elections, are essential conditions. To invest a body, which has been selected and created as a mode for ascertaining and declaring the general results of elections, with power to determine questions concerning the conduct or legality of an election, would, in my judgment, go far towards attacking one of those conditions and would be contrary to public policy.

The Constitution provides for elections by ballot and the legislature enacts laws respecting such elections and prescribes the mode of declaring and certifying the result. For the settlement of contests over elections courts exist, with adequate powers to investigate the causes of complaints, and for that end to take proofs and to adjudge accordingly ; while as to the elections, returns and qualifications of its own members, each house of the legislature shall judge. These boards of canvassers derive their powers strictly from the statute. They cannot hear or consider evidence outside of the returns. They are restricted by the law of their creation to certain prescribed functions, and in their fulfillment they act under the written commands of the statute.

As long ago as the case of *People* v. *Cook* (8 N. Y. 67), in this court, it was said by Judge WILLARD that " the legislature has not clothed either the state officers, or the subordinate boards of inspection, with power to hear and determine, by the means of evidence *aliunde* the return, the intention of the voters. The strictness with which these boards should be held to the record before them is dictated by sound policy and enlightened wisdom." And again, speaking with reference to the acts of boards of county canvassers, the same judge said that, " with a regular return from the district inspectors, which is fair on its face, they have no right to go behind it * * * they must act upon it as a regular return and leave the parties aggrieved to their remedy through the courts of justice." The law, in the respects we are considering, was the same then as it is to-day.

The views we have expressed in this opinion, concerning the

functions of a board of canvassers, lead to the conclusion, in this case, that the state board was without any power to regard, or to act upon anything before them, in relation to the election for senator in the sixteenth senatorial district, except those certified statements which the county boards were directed by the statute to make. The alleged facts in the affidavits and in the protest of Mr. Collins, accompanying the official returns of the county board, are not such as the board of state canvassers can consider; or as should have been transmitted to the state officers. So far as they relate to violations of the election law, they may be made the subject of criminal proceedings, and so far as they attack the legality or validity of the relator's election, they may be made the subject of a contest before the senate; which body possesses full jurisdiction to hear and determine such contests.

For the reasons which have been given, the order appealed from should be affirmed.

All concur, Andrews and Finch, JJ., in result.

Order affirmed.