In the Matter of the Application of RAYMOND J. FUNKHOUSER, Petitioner, for an Order Respecting the Canvass of Returns by the Westchester County Board of Canvassers (the Board of Supervisors of Said County), Pursuant to the Provisions of the Election Law, and for Other Appropriate Relief.

JOSEPH J. HEROLD, Objector, Respondent.

Supreme Court, Westchester County, December 4, 1935.

*Lynch, Cahn & Weed* [*George B. Francis* of counsel], for the petitioner.

*Clark & Davis* [*Ralph E. Becker* of counsel], for the respondent.

CLOSE, J.  The applicant moves by petition why:

1. This court should not determine that petitioner Raymond J. Funkhouser received the highest number of votes cast and was the successful candidate for the office of supervisor of the town of Harrison at the general election held on November 5, 1935.

2. The Westchester county board of canvassers should not be directed and required to so canvass the votes cast for such office and make its statement of canvass accordingly, and the said board and the Westchester county board of elections should not be directed and required to issue a certificate of election to and in the name of Raymond J. Funkhouser.

3. This court should not determine that a deed dated November 4, 1935, made by A. Hallden, Inc., grantor, to Raymond J. Funkhouser, grantee, was duly recorded in the office of the register of the county of Westchester on November 5, 1935, at ten-ten A. M. and that the action of said register in changing the date of recording to November 6, 1935, on the records in his office was improper, void and illegal and that said register be required and directed to correct his said records so as to show the date and time of recording as November 5, 1935, at ten-ten A. M.

4. This court should not determine that said Raymond J. Funkhouser was at the time of his election as supervisor an elector of and the owner of record of real property in the town of Harrison.

5. This court should not determine all questions of law and fact arising in these proceedings and make such order or orders as justice may require.

6. The petitioner herein should not have such other, further and/or different relief as may be incidental or otherwise just and proper.

This proceeding is pursuant to section 330 of the Election Law and particularly pursuant to subdivision 5 of such section. The pertinent parts of the above section read as follows:

" § 330. Summary jurisdiction. The Supreme Court is vested with jurisdiction to summarily determine any question of law or fact arising as to any of the subjects set forth in this section, which shall be construed liberally. Such proceedings may be instituted as a matter of right and the Supreme Court shall make such order as justice may require."

" 5. The canvass of returns by the state, or a county or a city board of canvassers, or by a town board of canvassers of the vote of a town meeting held at the same time as a general election, in a proceeding instituted by any voter."

It is conceded that at the time this proceeding was instituted, the board of canvassers had not completed their canvass, but apparently if a candidate anticipates adverse action by a board of canvassers, he may seek relief in the court. (*People ex rel. Brown* v. *Board of County Canvassers of Queens County*, 216 N. Y. 732; *People ex rel. Watkins* v. *Board of Canvassers of Oneida County*, 25 Misc. 444.) The facts are undisputed and are substantially as follows:

The applicant was a candidate for the office of supervisor of the town of Harrison at the election held on November 5, 1935, and received a majority of the votes cast for such office. After the result was known but prior to the official canvass by the board of county canvassers (Election Law, §§ 272–275; Town Law, § 83), one Joseph J. Herold, an elector of the town of Harrison, filed a protest with the board of canvassers asserting that the applicant was not entitled to a certificate of his election for the reason that he was not " the owner of record of real property in the Town at the time of his election " as required by section 23 of the Town Law.

It appears that in 1933 the applicant entered into a contract to purchase certain property in Harrison, where he now resides. The title to the premises, however, was taken in the name of a corporation known as R. J. Funkhouser, Inc. The purchase price was furnished by the applicant. He has personally paid all the carrying charges upon the property and is the sole owner of all the capital stock of such corporation. Consequently, he claims that such stock ownership makes him eligible as per the requirements of section 23 of the Town Law. In addition, it appears that on November 4, 1935, a deed was executed by A. Hallden, Inc., conveying certain property in Harrison to the applicant and that this deed was, through the courtesy of the register, received in the register's office on November 5, 1935, at ten-ten A. M., and a receipt given for it by a deputy register.

It appears from the return that nothing further was done with the deed after its deposit with the deputy register until Wednesday, November sixth, when the deputy entered the deed in the receiving register and the daily tickler for the town of Harrison, both entries being as of November fifth, at ten-ten A. M. Afterwards, and on the same day, the entries were changed to show the receipt of the deed for recording and entries in the various registers as of November sixth, at nine A. M. It is the applicant's contention that the deed was legally recorded at ten-ten A. M., November fifth, and the subsequent changes by the register are illegal and void. He further contends, assuming, without admitting, that the ownership of all the stock in R. J. Funkhouser, Inc., did not render him eligible, the deposit and acceptance of this deed did.

Passing to the relief asked for, item 1 may be conceded in part. It is not disputed but that the applicant did receive the highest number of votes cast and is and was the successful candidate. If qualified, the applicant is entitled to the assistance of this court.

Item 2 rests upon the same hypothesis. The board of canvassers acts in a ministerial capacity only. It is their duty to canvass the returns, at least it has been so held under the former Town Law when the town board acted as a board of canvassers (*People ex rel. Bradley* v. *Shaw*, 64 Hun, 356; affd., 133 N. Y. 493), and the reasoning employed in *People ex rel. Derby* v. *Rice* (129 N. Y. 461) can with equal force be applied to the county board of canvassers. (See, also, *People ex rel. Sherwood* v. *Board of Canvassers*, 129 N. Y. 360.) Likewise the duty of the board of elections is ministerial. (Election Law, §§ 274, 275.) The absolute lack of power of either of these boards to pass upon the qualifications is well illustrated in *Matter of Lindgren* (232 N. Y. 59). There the board of elections rejected a certificate of nomination upon the ground that the nominees named in the certificate were felons serving terms in the State prison: " There was nothing upon the certificate of nomination or the certificate filling the vacancies or curing defects to show to the board of elections that the two nominees were felons serving terms in a state prison. This fact was gathered by the board from other sources and used as a basis for rejecting the certificate."

After discussing the law, the court said (at p. 62): " It seems quite apparent, therefore, that when certificates of nomination are filed with the board of elections and are regular upon their face, any question regarding their validity or legality must be determined in the first instance by the Supreme Court or county judge. For the purpose of filing the certificates of nomination and placing the names of nominees upon the official ballot, the board of elections

acts ministerially. If for any reason not appearing upon the papers the certificate is insufficient, illegal or invalid and the names of the nominees should not be placed upon the official ballot, a direction to this effect should be made by the Supreme Court or the county judge (*Matter of Murphy*, 189 App. Div. 135; *Matter of McGrath*, 189 App. Div. 140; Saxe's Manual of Elections, p. 220)." (See, also, *Matter of Frankel* v. *Cheshire*, 212 App. Div. 664.)

However, there is precedent for refusal to give aid where the issue as to eligibility is tendered and conclusions adverse to the applicant are arrived at. (*People ex rel. Sherwood* v. *Board of Canvassers*, 129 N. Y. 360, 369, and cases therein cited.) There the court, in discussing the ineligibility of a candidate for State Senator, said: " The term eligible relates to the capacity of holding, as well as to the capacity of being elected to the office (*Carson* v. *McPhetridge*, 15 Ind. 327). Therefore, he could not be elected to or hold the office of senator. He violated the constitutional provision in seeking the votes of the electors, and they violated it in voting for him."

This proceeding is similar to a mandamus proceeding and relief may be granted only to secure or protect a clear legal right. (High Extraordinary Legal Remedies [3d ed.], § 40.) A further quotation from *People ex rel. Sherwood* v. *Board of Canvassers* (*supra*) is apposite: " It is quite true that a majority of the electors in the 27th senatorial district have, through the ballot box, expressed their will that the relator should represent them in the senate, and it is unfortunate that that will should for the present be defeated. But under our system of government, founded upon the majority rule, majorities must express their preferences in the form prescribed by the Constitution and the laws."

The fact that the offices may not be equal in dignity cannot undermine the principle involved.

Item 3 asks this court to determine that the deed from A. Hallden, Inc., to the applicant was duly recorded on November fifth at ten-ten A. M., and that the action of the register in showing its record date as November sixth was illegal and void. I have already stated the circumstances under which this deed was delivered to and deposited with the deputy register. I am of the opinion that this court is without power in this proceeding to direct the register to correct the records in his office so as to show that the deed was recorded at ten-ten A. M., November fifth. Such action is not within the purview of section 330 of the Election Law. The question remains, however, what is the legal effect of the delivery of the deed to the register as affecting the eligibility of the applicant here? I am of the opinion that the applicant may not use this

instrument as creating eligibility for the reason that it was not in fact recorded on November fifth, the day it was delivered to and deposited with the deputy register. His affidavit remains uncontradicted and his action in placing the deed in his desk without entry of any kind in any register or daily tickler makes the dicta contained in *Flynn* v. *Union Surety & Guaranty Co.* (170 N. Y. 145, at p. 147) inapplicable. The fact that the deputy register gave a receipt for the deed does not change the situation. I accept as true the statements contained in the affidavit of the deputy register as to what occurred. The legal effect was to merely deposit the deed with the deputy register. If at that time the deputy register had entered the deed in the register and in the daily ticklers it might be held that for the purposes of this case the deed was recorded (*Matter of Norton*, 34 App. Div. 79; appeal dismissed, 158 N. Y. 130), though even then it is very doubtful (*Page* v. *Shainwald*, 169 N. Y. 246). Permission to receive the deed depended upon the courtesy of the register. He could well have refused to open his office for the purpose of receiving the deed. Can it be that the Legislature intended to give to the register of deeds, by granting or witholding this courtesy to thus have in his hands, dependent upon his whim or caprice, the right to make a candidate eligible or ineligible as the case might be? Even assuming that the deed is held to be legally recorded, I am of the opinion that it was too late at ten-ten A. M. on November fifth for the applicant to become qualified if he was not previously qualified. Section 23 of the Town Law requires: " Every officer of the town *at the time of his election* or appointment and throughout his term of office, shall be an elector of the town and every elective officer shall be the owner of record of real property in the town at the *time of his election* and throughout his term of office." (Italics mine.) It becomes necessary to construe the meaning of the words " at the time of his election." What does this phrase mean? Does it mean that a candidate can become qualified after the polls are closed and prior to the announcement of the result? Does it mean that he may become qualified in the interim between the time the polls open and close? I am of the opinion that the candidate must be qualified when the voting begins and remain qualified throughout the time the polls are open at least. Section 23 of the Town Law contemplates that the electors of the town of Harrison could assume that at the time they cast their ballots, they were voting for a duly qualified candidate. In so far as this particular phase of the matter is concerned, the electors who voted prior to ten-ten A. M. were concededly voting for a candidate who was not qualified. He could do nothing after the votes were cast that would result in qualifying

him at the time the votes were cast. In *People* v. *Purdy* (154 N. Y. 439) it was held that a candidate for supervisor who was a school trustee when he was elected could not become eligible by resigning as such trustee after election day. The following sentence from the opinion states the reason: " The better rule is that the electors, *in making the choice,* must be confined to the selection of such persons only as are *not then* under any legal disqualification to exercise its powers [*i. e.,* of the office] and perform its duties." (Italics mine.)

Here the electors were " making the choice " from six A. M. on November fifth and the applicant was then under a legal disqualification which would prevent him from exercising the power and perform the duties of the office. Such disqualification could not be removed by any action thereafter taken.

Again in *People ex rel. Le Roy* v. *Foley* (148 N. Y. 677) the court says: " The canvass of the votes or statements is a ministerial act following the election and evidence of the result, but the will of the voters, *expressed by the deposit of their ballots,* is the essential thing in every election." (Italics mine.)

In *State ex rel. Harris* v. *Tucker* (54 Ala. 205) the word " election " is defined as " the act of casting and receiving the ballots, the day and time of voting," and further in the same case, " the primary meaning of the word election is choice — the act of choosing." Clearly, under these definitions, the applicant was not qualified, even granting his contention that the deed was legally recorded at ten-ten A. M., until that hour, and all who voted for him before that time were voting for an ineligible candidate.

Item 4. It remains to consider whether the sole ownership of the corporate stock of R. J. Funkhouser, Inc., is a sufficient compliance with the statute to qualify the applicant. It is obvious that the purpose of the statute is to provide that elective town office holders have a financial interest in the manner in which the government of the town is conducted. Section 23 of the Town Law is a comparatively recent enactment (Laws of 1932, chap. 634). Formerly the provisions as to eligibility of town officers were to be found in section 81 of the Town Law. Under that section, every elector of the town was eligible to hold any town office but inspectors of election " shall also be able to read and write." In 1932 the Legislature approved a bill recodifying the Town Law (Laws of 1932, chap. 634). Section 23 of that chapter contains the following property qualification: " Every elective officer shall be the owner of property assessed on the last preceding assessment roll of the town."

This qualification is similar to the property qualification for village trustees. (Village Law, § 42, prior to amendment contained

in Laws of 1935, chap. 811.) The Legislature was cognizant of the construction that had been placed upon that particular language by the courts. In view of that knowledge the present provision requiring elective town officers to be the " owners of record at the time of their election " takes on a stronger significance.

By chapter 751 of the Laws of 1933 the provisions as to eligibility were radically changed by striking out the language above quoted and inserting in lieu thereof the language that must be construed here, viz., " every elective officer shall be the owner of record of real property in the town at the time of his election and throughout his term of office." The Legislature evidently intended by this amendment to strengthen the language used in prescribing eligibility qualifications, and to clarify the many elements of ambiguity in the language formerly used. Undoubtedly, the decisions construing the language of section 42 of the Village Law had given such language a very liberal construction. If it was the intention of the Legislature to strengthen the law and compel every candidate to publicly establish his eligibility by being the owner of record, then the beneficial ownership of all the stock in a corporation, which was the owner of record, would not be sufficient. I am of the opinion that it was the intention of the Legislature to compel candidates to be actually the owners of record and not merely have a beneficial interest. The section requires the candidate to maintain his eligibility throughout his term of office by remaining an owner of record. Instruments of title to real estate are public records. Stock books of a corporation are not. The right to inspect the stock book of a corporation is strictly limited by law. (Stock Corp. Law, § 10.) If we were to assume that the ownership of the entire capital stock in a corporation which is the record owner of real estate in the town would make a candidate eligible for election, then there is no way by which the public may be kept informed of the continued eligibility throughout the term for which the candidate was elected. He might become disqualified at any time after assuming his office and there would be no public record of that fact. Record owner has been held to mean the owner of the real estate at the time in question as revealed by the public records. (*Hunt* v. *State*, 110 Tex. 204; 217 S. W. 1035.) In *Brock* v. *Poor* (216 N. Y. 387) the court says: " One who by purchase or otherwise becomes the owner of all the capital stock of a private corporation, does not thereby become the legal owner of its property but title to the latter is vested in the corporate entity. * * * ' In no legal sense can the business (or in equal sense the property) of a corporation be said to be that of its individual stockholders.' "

Items 5 and 6 need not be separately discussed.

The questions raised have been troublesome. The will of a clear majority of the electors should not be lightly set aside but it is the duty of the court to enforce the law as it finds it and not to be swayed by the fact that its decision may not be a popular one.

Motion by applicant is denied.

Respondent's cross-motion asking that the commissioners of election be directed to make an investigation is denied for the reasons stated under item 2.

Settle orders on notice.