In the Matter of JOHN MAZZOTTI, Petitioner, against JOHN R. SWEZEY, as Mayor of the Village of Patchogue, et al., Respondents.

Supreme Court, Special Term, Suffolk County, April 2, 1951.

*Francis J. Costello, Reginald C. Smith* and *Pierre G. Lundberg* for George E. Lechtrecker and others, respondents.

*Harold Ashare* for John R. Swezey, as Mayor, and others, respondents.

*Lincoln G. Schmidt* for petitioner.

PETTE, J. This application is brought by the petitioner for an order cancelling, revoking and nullifying the motions and resolutions of the board of trustees of the Village of Patchogue, made on or about March 23, 1951, insofar as same attempted to declare the petitioner ineligible for the office of trustee of the Village of Patchogue, and insofar as such motions and resolutions declared the respondent, Mapes, elected to the said office, and restraining the board of trustees of the Village of Patchogue from taking any further action in relation to the election held in the village of Patchogue on March 20, 1951, and particularly from determining the eligibility of any candidate, and restraining the respondent, Mapes, from taking any part in the matters and affairs of the Village of Patchogue as a trustee on and after 12:00 o'clock noon of April 2, 1951.

The petitioner alleges that at the village election of the Village of Patchogue held on March 20, 1951, at which three trustees of the said village were to be elected, the petitioner was one of the three highest candidates out of the six who contended for the said three offices. He alleges that following the election on March 20, 1951, the board of trustees of the Village of Patchogue met as a board of canvassers but that, in addition to canvassing the votes cast, the said board of trustees proceeded to hold that the petitioner is ineligible to hold public office as such trustee by reason of the fact that he was not the owner of record of real property within the village, as required by section 42 of the Village Law; that the said board of

trustees, after declaring the petitioner ineligible, declared the respondent Mapes elected as such trustee. Petitioner charges that the respondent Mapes received six votes less than did the petitioner and that, accordingly, the action of the board of trustees in declaring the said Mapes elected was contrary to the election returns. Petitioner alleges that prior to and since March 20, 1951, he was and is the owner of property within the village of Patchogue and is actually a taxpayer of such property and that the action of the board of trustees in declaring him ineligible and in declaring the respondent Mapes elected, was contrary to law and constituted an assumption of power which the said board of trustees did not possess under the law. He accordingly asks that an order be made revoking and nullifying the action of the board of trustees in declaring him ineligible and in declaring the respondent Mapes elected, and asks that this court restrain the respondents, constituting the board of trustees of the Village of Patchogue, from taking any further action relating to the election aforementioned and particularly restraining it from determining the eligibility of any candidate elected, and restraining the respondent Mapes from continuing to act as trustee after 12:00 o'clock noon of April 2, 1951.

All of the respondents excepting the respondent Payne moved to dismiss the petition on the ground that the court has no jurisdiction of the subject of this proceeding; that the petitioner has no legal capacity to sue, and that the petition does not state facts sufficient to constitute a cause for the relief demanded.

By another notice of motion the said respondents move to strike out paragraphs "13" and "14" of the petition as being sham, frivolous, irrelevant and impertinent.

This proceeding is, therefore, essentially one seeking a review of the action of the board of trustees of the Village of Patchogue in passing upon the eligibility of the petitioner and in declaring a minority candidate elected. It is contended by the petitioner that the board of trustees exceeded their power in going beyond the task of canvassing the votes cast at the election.

Section 53 of the Village Law provides that the inspectors of election shall, immediately upon the closing of the polls of each annual election, proceed to canvass the votes cast thereat and shall complete such canvass without adjournment. They shall, before nine o'clock in the forenoon of the following day, file with the village clerk their certificates setting forth the holding of the election, the total number of votes cast for each office, the number of votes cast for each person for such office, and if the village contains more than one election district, the

board of trustees of such village is required to meet at its usual place of meeting, not later than eight o'clock in the evening of the next day after the election; that the village clerk shall produce at such meeting the returns of the inspectors of election, and the board of trustees shall canvass such returns and file in the office of the village clerk a certificate declaring the result.

The trustees of the village, under section 53 of the Village Law, become a board of canvassers with their duties clearly defined and limited only to canvassing the returns and filing a certificate declaring the result.

Section 69 of the Village Law provides that " the general provisions of the election law shall apply to all elections held under the provisions of this article and not inconsistent therewith ". Under the provisions of the Election Law, the power of a canvassing board is limited to ascertaining that all the returns, with tally sheets, if any, containing the statement of canvass received from inspectors of election, have been received, to canvassing the votes cast and to correct any omissions or mistakes which appear on the face of the returns (Election Law, § 273).

Upon the completion of the canvass, the canvassing board is required to make statements thereof, showing separately the result as to each office. The statement shall set forth all votes cast for all candidates for each office, the name of each candidate, and the number of votes so cast for each. (Election Law, § 275.)

The canvassing board is required to determine what person has, by the greatest number of votes, been elected to each such office. (Election Law, § 276.)

" The board of canvassers acts in a ministerial capacity only." (*Matter of Funkhouser,* 157 Misc. 400, 403.)

In *People ex rel. Derby* v. *Rice* (129 N. Y. 461, 465–468) the Court of Appeals said: " No judgment, which proceeds upon direct methods of reasoning, and which guides itself by the written law of the state, can fail to reach the conclusion that the office of these boards of canvassers is purely a ministerial one. Upon them devolves by statute the obligation to fulfill precise functions. They are charged by the statute with absolute and certain duties. What those duties are to-day, they have always been since the legislature, acting under the authority of the Constitution of the state, undertook to direct the manner in which elections by ballot should be conducted. Citing the words of the law, the board shall, upon the certified copies of the statements made by the boards of county canvassers, proceed to make a statement of the whole number of votes given at

such election for the various offices; each of which statements shall show the names of the persons to whom such votes shall have been given for either of the said offices, and the whole number of votes given to each  *  *  *.  They shall certify such statements to be correct and subscribe the same with their proper names.  *  *  *  The statements returned by the county boards cannot lawfully contain anything save the whole number of votes given in each town and district, the names of the candidates and the number of the votes given to each.  Thus it is perfectly evident, from the provisions of the statute, that the limits for the action of the state board of canvassers are fixed, and that there is an utter absence of warrant for their proceeding upon anything but the certified statements required by statute to be made and filed by the county boards, and then to be transmitted to the state officers.  The board is called into a temporary existence by statute, and for the mere purpose of computing the votes cast throughout the state, as returned to them from the boards of the several counties, and to declare the result of such computation.  It is but a part of the machinery constructed by the legislature for the purpose of determining and declaring the result of the votes cast at the election.  *  *  *  To imply the possession of a power to determine otherwise than upon the evidence, which the statute provides for; to invest this board, so manifestly created for the fulfillment of a mere ministerial function, with any judicial powers, would be counter to the plain terms of the statute.  In a government resting upon universal suffrage, the purity of the ballot and a correct count, and an exact return of the votes cast and counted, made in strict compliance with the law enacted by the legislature for the conduct of elections, are essential conditions.  To invest a body, which has been selected and created as a mode for ascertaining and declaring the general results of elections, with power to determine questions concerning the conduct or legality of an election, would, in my judgment, go far towards attacking one of those conditions and would be contrary to public policy.  *  *  *  These boards of canvassers derive their powers strictly from the statute.  They cannot hear or consider evidence outside of the returns.  They are restricted by the law of their creation to certain prescribed functions, and in their fulfillment they act under the written commands of the statute.''

The reasoning employed in *People ex rel. Derby* v. *Rice* (*supra*) can with equal force be applied to the trustees of the Village of Patchogue acting as a board of canvassers. (*Matter of Funkhouser,* 157 Misc. 400, *supra.*)

"The board of State canvassers act ministerially, and * * * they have no power or jurisdiction to go outside of the returns of the county canvassers or to institute an inquiry as to the eligibility of the candidates who were voted for by the electors. The question of eligibility is to be answered by reference to the law as well as the facts, and very wisely, as I think, they are not clothed with authority to determine that question. Much less have they authority to determine whether the minority candidate was elected. In the solution of that question is involved not only the eligibility of the majority candidate, but the further question whether the voters voted for him knowing of his ineligibility". (*People ex rel. Sherwood* v. *State Bd. of Canvassers,* 129 N. Y. 360, 374.)

"The canvass of votes or statements is a ministerial act following the election and evidence of the result". (*People ex rel. Roy* v. *Foley,* 148 N. Y. 677, 681.)

The trustees had no power to nullify the election of the petitioner.

"Except for the remedy provided for by section 23-a of the Town Law, we think the orderly procedure is, as it has always been, that if a person is elected to office, he may only be ousted therefrom by an action in the nature of quo warranto with the full right of trial by jury in accordance with the rules of common law." (*Seavey* v. *Van Hatten,* 276 App. Div. 260, 262.)

Nor did they have the power to declare Mapes elected. The only time the trustees could determine which of two persons was elected is in case of a tie vote, that is, if two or more persons receive an equal and the greatest number of votes for the same office, and in such case the determination is required to be made by lot and by no other method. (Village Law, § 53.) Such, however, was not the situation in this case.

The act of the trustees in declaring Mapes elected finds no warrant in the law. Section 61 of the Village Law provides that " vacancies occurring *otherwise than by expiration of term in a village office,* [italics mine] shall be filled by the board of trustees, if the office be elective ". The vacancies necessitating the election of the three trustees on March 20, 1951, arose *because* of the expiration of the terms of three of the incumbents. Hence no power was vested in the trustees either to declare the petitioner ineligible or to declare Mapes elected. " In a case where the person receiving the highest number of votes is ineligible, to declare the person receiving the next highest number of votes elected would be subversive of the popular will." (*People ex rel. Stalter* v. *Lynch,* 219 App. Div. 1, 3, affd. 245 N. Y. 534.)

The provision in section 53 of the Village Law that "the person eligible and receiving the highest number of votes for an office shall be elected thereto" does not authorize the board of trustees, acting as a board of canvassers, to determine the "eligibility" of such person. It merely states a general proposition of law. That it was not the legislative intent to invest the board of trustees with the power to determine the "eligibility" of a candidate receiving the highest number of votes, is clear. Under section 53 of the Village Law, the board of trustees are required to meet for the purpose of canvassing the votes "not later than eight o'clock in the evening of the next day after the election." Under section 59 of the Village Law, the clerk of the village is required, "within three days after the election" to notify each person elected that he was elected and to require him to file his oath of office with such clerk, together with proof by affidavit of his eligibility to hold such office, and that upon his failure to so do, he will be deemed to have declined the office. The Legislature, by fixing the time limitations, intended that the question of eligibility shall not be determined at the meeting of the board of trustees held "not later than eight o'clock in the evening of the next day after the election", but only after the village clerk "within three days after the election" has notified such person of his election and his requirement to file his oath of office and furnish proof of his eligibility.

The papers before me do not show that any such notification was sent to the petitioner by the village clerk. Even if such notification had been given by the village clerk, petitioner would still have time to qualify within fifteen days after the commencement of the term of office for which he was chosen (Public Officers Law, § 30, subd. 8) and it is only after the expiration of such fifteen-day period that failure to file such oath and proof of eligibility would result in the office being declared vacant. In no event, however, was the board of trustees empowered at the meeting held on March 23, 1951, to declare the petitioner ineligible and to declare the respondent Mapes elected, in the face of the election returns which did not show Mapes to be elected. There is nothing in the Village Law which authorizes the board of trustees of a village to determine the question of eligibility of a person elected as trustee. The trustees are only authorized to canvass the votes, a duty which, as has been pointed out, is a ministerial one only, which does not confer the power to determine eligibility. (*People ex rel. Gerst* v. *Davis,* 43 Misc. 397; *People ex rel. Worth* v. *Kanar,* 80 Misc. 552.)

I cannot sustain the action of the board of trustees in declaring that petitioner was ineligible under section 42 of the Village Law. The petition in paragraph "8" alleges that the petitioner prior to and since March 20, 1951, was and is the owner of property within the incorporated limits of the village of Patchogue. For the purpose of the motion to dismiss the petition as legally insufficient, the allegations of the petition must be deemed admitted, as must every fact which can be fairly and legitimately drawn therefrom. (Rules Civ. Prac., rule 106.) "To sustain the complaint, plaintiff is entitled to every favorable inference that reasonably may be drawn from the allegations that it contains." (*O'Neil Supply Co.* v. *Petroleum Heat & Power Co.*, 280 N. Y. 50, 53.) Terminology used in a pleading is immaterial in passing on a motion to dismiss the pleading for insufficiency. (*American Concessionaires* v. *City of Long Beach*, 167 Misc. 773.) "The pleading challenged for insufficiency must be construed broadly and liberally and every fair inference resolved in its favor, however imperfectly or informally facts may have been drawn." (*Katz* v. *Gevirtz*, 83 N. Y. S. 2d 52, 53–54.) "However imperfectly, informally or even illogically the facts may be stated, a complaint, attacked for insufficiency, is deemed to allege ' whatever can be implied from its statements by fair and reasonable intendment.' " (*Condon* v. *Associated Hosp. Service of New York*, 287 N. Y. 411, 414.)

While it is true that the petition does not allege in so many words that the petitioner was at the time of his election " an owner of record " of title to real property in the village of Patchogue, the allegations in paragraph "8" of the petition may be construed to mean that. The Village Law, unlike the Town Law, does not define the term " owner of record." Prior to 1948, section 42 of the Village Law merely provided that a trustee of a village was required to be " the owner " of title to real property in the village. By chapter 369 of the Laws of 1948, the Legislature added the words " of record " after the word " owner ". At the same session of the Legislature, chapter 808 of the Laws of 1948 was enacted, amending the Town Law by adding a new section, 23-a of the Town Law, which states that " record ownership of real property * * * may be evidenced by a conveyance duly recorded in the office of the county clerk or register of the county in which the town is located, by a will duly admitted to probate in the office of the surrogate of the county, or by certified copy of a will recorded in the office of the county clerk or register of the county " etc. No such provision is contained in the Village Law. It is reason-

able to assume that had the Legislature intended that evidence of "record ownership" under the Village Law should be of the same character as that required under the Town Law, it would have enacted into the Village Law a provision similar to section 23-a of the Town Law. The omission of the Legislature cannot be supplied by the court. The appeal if any, must be made to the Legislature.

"Record owner has been held to mean the owner of the real estate at the time in question as revealed by the public records." (*Matter of Funkhouser*, 157 Misc. 400, 407, *supra*.)

The question, however, here presented is what constitutes a public record under the Village Law. Had a provision similar to section 23-a of the Town Law been incorporated in the Village Law, the question would have been answered. In the absence of such a provision, this court cannot determine in this proceeding that petitioner was not eligible to the office of village trustee. The petition alleges that the petitioner is "the owner of property within the incorporated limits of the Village of Patchogue and is actually a taxpayer of such property." There has been mention of the fact that the real property wherein petitioner and his wife reside is assessed on the assessment rolls in the town in the name of petitioner as well as his wife. In the absence of any definition in the Village Law of what constitutes "record ownership" the assessment rolls may be deemed to be public records. The question of eligibility under section 42 of the Village Law cannot be determined in this proceeding but only in proceedings in quo warranto.

In *Matter of Wier* (259 App. Div. 839, 840) the Appellate Division, Second Department, said: "The court was without power, on the petition and answering affidavits, to resolve the question of fact thus presented in respect of whether or not Behrens was qualified to be elected as a trustee of the village. The question of fact as to whether or not he was the owner of real property, as required by section 42 of the Village Law, is one upon which Behrens is entitled to have a jury trial in proceedings by *quo warranto,* in which his title to the office of trustee should be tried. (*Greene* v. *Knox,* 175 N. Y. 432, 437, 438.) The Special Term may not on affidavits pass upon the credibility of Behrens' version of the incidents affecting his claim of legal title to real property."

Nor may the action of the trustees be justified by the provisions of section 5 of the Public Officers Law, which provides for holding over after expiration of term by an incumbent until his successor is designated or chosen. Such may have been the case if there was only one vacancy filled at the March 20,

1951 election. However, there were three incumbents whose terms expired, and there were six candidates contesting for the three offices to be filled. It cannot be said that Mapes was the incumbent of the office for which petitioner received the majority vote. There being three vacancies, the court cannot determine who the incumbent is.

The question of petitioner's eligibility is not before this court. The only question presented here is whether there was any basis in law for the action of the trustees in declaring the petitioner ineligible and in declaring the respondent Mapes elected. I hold that the trustees exceeded their authority in so doing. '' The successful candidates are entitled to the office each has won at a duly constituted election unless they are unseated in a quo warranto action. The right to a jury trial has always existed in cases to determine who is entitled to public office.'' (*Matter of Ginsberg* v. *Heffernan*, 186 Misc. 1029, 1035.)

The duty of canvassing the votes being a ministerial one, the trustees were limited in their authority and did not possess the power to do any more than just that. Their duty was to canvass the vote and to declare the result. Their failure to perform their duty requires this court to direct them to perform. The Supreme Court has jurisdiction both under article 14 of the Election Law and article 78 of the Civil Practice Act to compel election officials to perform their duties. (*Matter of Mullen* v. *Heffernan*, 193 Misc. 334, affd. 274 App. Div. 972, affd. 298 N. Y. 785.)

The court is without power to void the election and order that a new one be held. See *Matter of Ginsberg* v. *Heffernan* (186 Misc. 1029, 1034, *supra*) where the court said: '' No case has been pointed out to us which holds that where an election has been held and officials elected, the court has power under article 78 to void that election and direct the holding of a new one.''

At page 1035 the court said: '' It seems clear that article 78 does not provide any summary procedure for depriving a successful candidate of his office. If that were the purpose of the statute, then it would be clearly unconstitutional, for it would take away the candidate's right to have his title to office tested at a trial before a jury.''

Accordingly, the motion to dismiss the petition is denied. The motion to strike out paragraphs '' 13 '' and '' 14 '' of the petition is denied and the petitioner's motion is in all respects granted.

Settle order on notice.